[No. D041780. Fourth Dist., Div. One. Aug. 31, 2004.]

ENRIQUE M., Plaintiff and Appellant, v.
ANGELINA V., Defendant and Respondent.

## COUNSEL

Enrique M., in pro. per., for Plaintiff and Appellant.

Olins, Hayes & Miller and Laura H. Miller for Defendant and Respondent.

## OPINION

**AARON, J.—** Enrique M. (Enrique) filed an order to show cause seeking to modify a stipulated order governing the parenting schedule and schooling of his and Angelina V.'s (Angelina) son, X. The trial court denied Enrique's requests on the ground Enrique had failed to carry his burden of showing a change of circumstances sufficient to justify the modification. On appeal, Enrique contends that he was not required to demonstrate a change of circumstances because he did not seek to modify custody of X. We hold that the standard of proof a parent sharing joint custody must meet to effect a change in parenting time is the best interest of the child, not changed circumstances. We therefore reverse the order and remand for further proceedings.[1]

I

## FACTUAL AND PROCEDURAL BACKGROUND

Enrique and Angelina dated from 1995 to 1997. In September 1997, after their relationship had ended, Angelina gave birth to their son, X.

In March 1998, Enrique filed a complaint to establish a parental relationship and child custody and visitation. In the complaint, Enrique alleged that Angelina had refused to allow him to have any involvement with X.

---

[1] In light of our reversal of the trial court's order, we need not consider Enrique's other claims.

The parties reached a partial agreement in a mediation conducted by Family Court Services (FCS). The parties agreed to a "six-step program of gradually introducing [X.] into his father's life more extensively until such time as the parents are sharing the child fairly equally." After a hearing in April 1998, the trial court entered an order in June 1998 adopting the parties' partial agreement and the FCS recommendations. The court's order stated that the parents would share joint legal custody of the child, that X.'s primary residence would be initially with Angelina, and that Enrique's custody rights would be gradually increased over time until the parents shared joint physical custody.

By the end of 1998, X. was with Enrique from Sunday night through Monday morning, Tuesday night through Wednesday morning, Friday night through Saturday afternoon, and on alternating holidays. X. did well with this arrangement for several years.

Enrique and Angelina were unable to cooperate with each other regarding numerous issues relating to X.'s upbringing. By the time of the entry of the January 2003 order at issue in this appeal, the parties had participated in 17 private mediation sessions, and five mediation sessions with FCS.

In late 2001, a dispute arose over where X. would attend kindergarten the following year. At the time, Angelina lived in San Marcos with her husband and baby daughter, and Enrique lived in San Ysidro with his older daughter from a prior marriage. Angelina was working in Kearny Mesa, and Enrique attended law school at the University of San Diego. Angelina wanted X. to attend Richland Elementary School in San Marcos. She also wanted to modify the parenting schedule once X. started kindergarten so that X. would reside with her during the school week and with Enrique only on the first, third, and fifth weekends of the month. Enrique opposed any change in the parenting schedule, and wanted X. to attend the Language Academy in San Diego, where Enrique's older daughter attended school.

In December 2001, the family court denied a request by Angelina that she be awarded sole legal custody of X. and that Enrique's visitation rights be decreased. The court also ordered that X. be enrolled at Richland Elementary School for kindergarten. In its written order filed in February 2002, the court stated: "[I]t is appropriate to enroll the child in the district of the primary custodial parent. The court sees Mother in that role."

In March 2002, Angelina obtained a temporary restraining order based on her allegation that Enrique had "perpetrated domestic violence" against her by driving his car away while Angelina was leaning into the back window to kiss X. good-bye. Enrique contended that Angelina was exaggerating the

incident, and that he had merely "inch[ed]" his car away while Angelina was peeking into the back window.

Concurrently with her application for a temporary restraining order, Angelina filed another request for modification of Enrique's visitation rights. She requested that Enrique's visitation rights be limited to alternating weekends to accommodate X.'s upcoming kindergarten schedule. This was essentially the same request Angelina had made prior to the court's order of December 2001.

Enrique again opposed any change in the parenting schedule. He stated that he was planning to move from San Ysidro to Normal Heights, and he reiterated that he wanted X. to attend The Language Academy with his daughter. In mediation with FCS, the counselor recommended that the parenting schedule be changed once X. entered kindergarten in San Marcos. Specifically, the counselor recommended that when kindergarten started, Enrique's parenting time during the school year be limited to the first, third, and fifth weekends of the month, and one evening per week.

Enrique opposed the FCS recommendation. He submitted a declaration stating that the recommended reduction of his parenting time would be detrimental to his relationship with X. Enrique also requested a continuance in order to allow him time to secure housing in the North Park/Normal Heights area. He contended that once he moved from San Ysidro to North Park, which is closer to San Marcos, he would be able to take X. back and forth to school with no difficulty, even if X. were to remain at Richland Elementary.

On June 19, 2002, the parties entered into a handwritten stipulation and order signed by them and by the family court judge. The parties agreed that they would continue to share joint legal and physical custody, and that X.'s primary residence would be with Angelina. They further agreed that once X. was in school, Enrique would have him from Friday afternoon until Monday morning on the first, third, and fifth weekends of each month. In addition, Enrique would have X. on Thursday evenings preceding each of these weekends, and on Thursdays, overnight, preceding Angelina's weekends. Finally, the parties agreed to share parenting time equally during school breaks, with Enrique having X. on Wednesdays, Thursdays, and alternating weekends, and Angelina having him on Mondays, Tuesdays, and alternating weekends.

In July 2002, X. started kindergarten in Track D at Richland Elementary School, a year-round school with four different tracks, or schedules. Enrique moved to North Park later that month.

In August 2002, Enrique filed the motion underlying this appeal. In his motion, Enrique requested that the parenting schedule be modified to include overnights with him every Tuesday and Thursday. Enrique also requested that X. be enrolled in the Track B schedule at Richland Elementary rather than Track D, so that X.'s school schedule would coincide with Enrique's daughter's school schedule. In the alternative, Enrique requested that he be allowed to enroll X. in The Language Academy.

On January 7, 2003, the court denied Enrique's requests. The court concluded that, due to the stipulation and order of June 19, 2002, "the father bears the burden of showing a substantial and compelling change in circumstances in order to modify the existing order," and that "there isn't evidence of a substantial and compelling change in circumstance that would cause the Court to modify the existing order."

However, the court indicated it would have been inclined to modify the parenting schedule if it were considering the matter in the first instance. The court stated in relevant part: "By the way, let me say as an aside, I don't really like the current schedule. I don't think it's the best schedule for this child. . . . The schedule is too complicated for you folks to work through together because you don't cooperate with each other very well. . . . And, frankly, to be honest with you, I don't think it gives dad enough time with the child. . . .

"Even though I may not think it's the best order for this child and the best order for the child and the father or even the child and the mother, it doesn't matter what I think about it. You've entered into a stipulation that became an order of the court. It became a final order of the court on the issue of custody and visitation. And you haven't shown me enough of a change in circumstance that would allow the Court, as a matter of law, to modify the order.

"If we had to start this from scratch, I'd probably come up with a different plan . . . . But, again, I don't think, as a matter of law, that I can change this order because I don't think you've shown me the—the level of evidence under the standard of [review] that's required for me to make the change. So that's why I denied the motion.

"The changes that I would impose on this order, if I had the ability to make the change, would not be to add more time with father during the school week. It would be to probably add another weekend . . . . I'd probably . . . [give dad the] first, second, and fourth and give mom the third or something like that. [¶] I'm not doing that, but I'm just telling you that the time that I would add for dad would be weekends time, not school time."

Enrique appeals from the trial court's order of January 7, 2003.

## II

## DISCUSSION

### A. *The Trial Court's January 7, 2003 Order Is Appealable*

We requested supplemental briefing on the appealability of the trial court's January 7, 2003 order. We conclude that the January 7, 2003 order is an appealable order after final judgment.

█ It is settled that the right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1365–1366 [118 Cal.Rptr.2d 71].) In civil matters, Code of Civil Procedure section 904.1 is the main statutory authorization for appeals. Code of Civil Procedure section 904.1, subdivision (a) provides in relevant part that an appeal may be taken from: a final judgment (subd. (a)(1)); an order made after an appealable judgment (subd. (a)(2)); or "an order made appealable by the provisions of the Probate Code or the Family Code" (subd. (a)(10)).

█ The Family Code contains no express provision governing appeals of child custody orders, except for those to enforce an order for the return of a child under the Hague Convention on the Civil Aspects of International Child Abduction. (Fam. Code, § 3454.) Thus, the right to appeal a child custody determination is generally limited to final judgments and orders made after final judgments. (Code Civ. Proc., § 904.1, subd. (a)(1) & (2); see *In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 705, fn. 1 [121 Cal.Rptr.2d 356], disapproved on other grounds by *In re Marriage of Lamusga* (2004) 32 Cal.4th 1072 [12 Cal.Rptr.3d 356, 88 P.3d 81] (*Lamusga*) [finding that trial court's ruling on mother's request for modification of judgment as to custody and visitation was "appealable as an order made after a judgment"].)

In *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 253–254 [109 Cal.Rptr.2d 575, 27 P.3d 289] (*Montenegro*), the Supreme Court exercised appellate jurisdiction over an appeal taken from an order entered after a contested hearing on custody. Similarly, in *Lamusga, supra*, 32 Cal.4th 1072, the Supreme Court considered an appeal taken from an order modifying an order entered after a contested hearing on custody. The *Lamusga* court rejected the argument of one of the parents that there had not "been 'a final judicial custody determination,'" reasoning that "[t]he [trial] court's December 23, 1996, 'Order After Hearing,' granting joint legal custody to the parties and sole primary physical custody to the mother, constituted a final judicial custody determination . . . ." (*Id.* at p. 1088, fn. 2.)

 In this case, as in *Montenegro* and *Lamusga*, the trial court initially entered a custody order after a contested hearing. In March 1998, Enrique filed a complaint seeking to establish a parental relationship and requesting child custody and visitation. After a hearing in April 1998, the trial court entered an order which provided that Enrique and Angela would share joint legal custody and that Enrique's physical custody rights would be gradually increased over time until the parents shared joint physical custody. We conclude that the trial court's June 1998 order, entered after a hearing and determining the issues raised in Enrique's complaint, constituted an appealable "final judgment[] as to custody." (*Montenegro, supra,* 26 Cal.4th at p. 259; cf. *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559 [101 Cal.Rptr.2d 86] [concluding a *temporary* custody order is not appealable because it is "interlocutory by definition, since it is made pendente lite with the intent that it will be superseded by an award of custody after trial"].) Accordingly, the January 7, 2003 order is an appealable order after judgment. (See *In re Marriage of Lasich, supra,* 99 Cal.App.4th at p. 705, fn. 1.)

### B. *The Trial Court Erred in Requiring Enrique to Demonstrate Changed Circumstances to Justify a Modification in the Parties' Parenting Schedule and X.'s School Situation*

 Enrique claims the trial court erred in requiring him to demonstrate changed circumstances before the court would grant his requests to modify the parties' parenting schedule and X.'s school situation. Enrique maintains that the changed circumstance rule applies only to requests to modify custody, and not to modifications such as those he requested. Enrique's contention as to the appropriate legal standard to apply in ruling on his requests raises a question of law, which we review de novo. (E.g., *People v. Butler* (2003) 31 Cal.4th 1119, 1127 [6 Cal.Rptr.3d 730, 79 P.3d 1036].)[2]

"In making an initial custody determination, the court must make an award that is in accordance with the best interests of the child." (*In re Marriage of*

---

[2] We recognize that in *Montenegro*, the Supreme Court applied the abuse of discretion standard in considering whether the trial court had erred in utilizing the changed circumstance rule rather than the best interest test in determining a request for custody. (*Montenegro, supra,* 26 Cal.4th at p. 255 [concluding trial court "did not abuse its discretion by refusing to apply the changed circumstance rule" in the absence of a final judicial custody determination].) However, the issue of which standard of review to apply was not before the *Montenegro* court. Therefore, its use of the abuse of discretion standard does not constitute authority for the proposition that this is the proper standard of review. (E.g., *People v. Salas* (2004) 119 Cal.App.4th 805, 819 [14 Cal.Rptr.3d 689] ["It is axiomatic that cases are not authority for propositions not considered"].) In any event, because Enrique would prevail under either the de novo standard of review or the abuse of discretion standard, the question of which standard of review to apply is not dispositive in this case.

*Loyd* (2003) 106 Cal.App.4th 754, 758 [131 Cal.Rptr.2d 80], citing *Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486]; Fam. Code, § 3040.) In *Burchard v. Garay, supra,* 42 Cal.3d at page 535, the California Supreme Court explained that the changed circumstance rule is an adjunct to the best interest test in the context of requests to modify custody: "In deciding between competing parental claims to custody, the court must make an award 'according to the best interests of the child.' (Civ. Code, § 4600, subd. (b)). This test, established by statute, governs all custody proceedings. [Citation.] The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements. [Citations.]"

The California Supreme Court has repeatedly discussed the changed circumstance rule in cases involving requests to modify *custody,* where granting the request would remove custody from one parent and give it to the other parent. (E.g., *Lamusga, supra,* 32 Cal.4th at pp. 1081, 1088–1089 [discussing changed circumstance rule where noncustodial parent sought custody of children due to custodial parent's impending move from California to Ohio]; *Montenegro, supra,* 26 Cal.4th at pp. 253–254, 256 [discussing changed circumstance rule where parents sharing joint physical custody each sought sole physical custody of child]; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 [51 Cal.Rptr.2d 444, 913 P.2d 473] *(Burgess)* [concluding "same allocation of the burden of persuasion applies in the case of a custodial parent's relocation, as in any other proceeding to alter existing custody arrangements"]; *Goto v. Goto* (1959) 52 Cal.2d 118, 122 [338 P.2d 450] ["A showing of changed circumstances is required to support an order changing custody" from one parent to the other].) However, Angelina has not cited, and our research has not uncovered, any published California case in which a court has held that the changed circumstance rule applies to a request to modify the allocation of parenting time, where a preexisting joint custody order was in place and custody was not at issue.

In *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513 [260 Cal.Rptr. 210] *(Birnbaum),* the Court of Appeal expressly held that where a court's order does not change *custody,* but rather alters a *parenting schedule,* the changed circumstance rule does not apply. In *Birnbaum,* the

parents initially shared legal and physical custody of their children. During the school year, the mother had the children during the week, and the father had the children on weekends and Wednesday afternoons. Both the mother and father moved for sole physical custody. The trial court maintained the joint physical custody arrangement, but ordered that the children reside with the father during the week for three out of every four weeks, and with the mother only on weekends and Wednesday nights. (*Ibid.*)

On appeal, the mother claimed the trial court erred in failing to require the father to demonstrate changed circumstances. The *Birnbaum* court concluded that the father was not required to demonstrate changed circumstances because there had been no change of custody. The *Birnbaum* court reasoned: "[The mother] first asserts that there were no material changed circumstances sufficient to justify a change in custody. 'It is settled that to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child.' (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36 . . . ].) The basic deficiency in [the mother's] contention and her appeal from an order she claims changes custody is, whether there were changed circumstances or not, *there has been no change of custody*. The trial court ordered, 'The parties shall continue to have and share joint legal and joint physical custody of their minor children,' just as they did under the prior order. At most there has been a change in what the trial court termed the 'co-parenting residential arrangement.' " (*Birnbaum, supra*, 211 Cal.App.3d at p. 1513, italics added.)

The Supreme Court's decision in *Burgess* is fully consistent with the holding in *Birnbaum*. In *Burgess*, the court considered the respective burdens of proof that apply when a parent who has sole physical custody of a child seeks to relocate. (*Burgess, supra*, 13 Cal.4th at p. 28.) The *Burgess* court held that the noncustodial parent bears the burden of establishing that a custodial parent's move would cause "prejudice" to the child and that a change in custody is " ' "essential or expedient for the welfare of the child . . . ." ' [Citation.]" (*Id.* at p. 40.) However, the *Burgess* court further held that even if the noncustodial parent could not carry his or her burden in garnering a change of *custody*, a trial court could still modify *visitation* orders: " Even if 'prejudice' is not established and a change in custody is not ' "essential or expedient for the welfare of the child" ' (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 730), however, the trial court has broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent in the event of a move, e.g., by increasing the amount of visitation with the noncustodial parent during vacations from school, allocating transportation

expenses to the custodial parent, or requiring the custodial parent to provide transportation of the children to the noncustodial parent's home. Indeed, such modifications of orders regarding contact and visitation may obviate the need for costly and time-consuming litigation to change custody, which may itself be detrimental to the welfare of minor children because of the uncertainty, stress, and even ill will that such litigation tends to generate." (*Burgess, supra,* 13 Cal.4th at p. 40.)

The *Burgess* court's statement that a trial court has the discretion to modify visitation orders, without any suggestion that the noncustodial parent would have to demonstrate changed circumstances to justify such changes, is fully consistent with *Birnbaum*. Further, the *Burgess* court's statement that such modifications of visitation could serve to obviate time-consuming custody litigation illustrates the distinction between requests to modify visitation, or parenting time, and requests to modify custody.

The *Burgess* court also "suggested that the changed circumstance rule does not apply when the parents have joint custody." (*Montenegro, supra,* 26 Cal.4th at p. 254, fn. 1; see also *Lamusga, supra,* 32 Cal.4th at p. 1089, fn. 3 [stating that when parents share joint physical custody "if it is shown that the best interests of the children require modification or termination of the order, the court 'must determine de novo what arrangement for primary custody is in the best interest of the minor children,' " citing *Burgess, supra,* 13 Cal.4th at p. 40, fn. 12].) The *Burgess* court explained: "A different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children. In such cases, the custody order 'may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order.' (Fam. Code, § 3087.) The trial court must determine de novo what arrangement for primary custody is in the best interest of the minor children." (*Burgess, supra,* 13 Cal.4th at p. 40, fn. 12.)

As the court in *Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1203–1204 [62 Cal.Rptr.2d 766], recognized: "This aspect of the *Burgess* decision is consistent with the earlier decision in . . . *Birnbaum*[, *supra,*] 211 Cal.App.3d [at p.] 1513, in which the court reasoned that when the parents have joint physical custody, modification of the coparenting arrangements is not a change of custody requiring change of circumstances. Instead, the trial court has wide discretion to choose a parenting plan that is in the best interest of the child. (*Id.* at p. 1518.)"

The holding in *Birnbaum* is also consistent with the fact that the changed circumstance rule is based, in part, on the need to protect "stable custody arrangements," which are believed to be in the best interest of the child. (*Burchard v. Garay, supra,* 42 Cal.3d at p. 535) The rule promotes stability by preventing the reexamination of final judicial determinations of custody in the absence of "some significant change in circumstances . . . ." (*Ibid.*) However, the Supreme Court recently emphasized that "the changed circumstance rule should be flexible and should reflect the changing needs of children as they grow up . . . ." (*Montenegro, supra,* 26 Cal.4th at p. 259.)

In this case, at the time Enrique brought his motion, he and Angelina had stipulated to joint physical custody of X., and the court had entered an order stating that the parties would share joint legal custody. Enrique's requests to alter the parenting schedule and X's school situation did not amount to a request to modify the joint custody arrangement. The order to show cause form Enrique filed with the court distinguishes between requests to modify "custody" and requests to modify "visitation." Enrique did not check the box indicating a desire to modify custody. Further, at the time Enrique made his request, X. was with him on alternating weekends, during the early evening on Thursdays preceding Enrique's weekends, and on Thursdays overnight preceding Angelina's weekends. In his motion, Enrique requested that the parenting schedule be modified to provide him with one extra overnight with X. each week and an additional overnight every other week. Although Enrique's proposed changes would alter the parenting schedule, in terms of potential instability for X., they were not on a par with a request to change physical custody from sole to joint custody, or vice versa.

Although Enrique did not seek to modify custody, the trial court applied the changed circumstance rule in determining Enrique's motion. Further, with respect to Enrique's request regarding the parenting schedule, the court stated that it would have reached a different result if it were considering the issue de novo. We conclude that the trial court erred in applying the changed circumstance rule to Enrique's requests, and that such error requires reversal.

### III

### CONCLUSION

The trial court's January 3, 2003 order is appealable. The trial court erred in requiring Enrique to demonstrate changed circumstances to justify a change in the parenting schedule and a change in X.'s school situation. Accordingly, we reverse the order and direct the trial court to reconsider Enrique's requests, applying the best interest test.

## IV

## DISPOSITION

The order is reversed and remanded with directions that the trial court reconsider Enrique's requests, applying the best interest test. Enrique is awarded costs on appeal.

McConnell, P. J., and O'Rourke, J., concurred.