Filed 2/20/14  Marriage of K.C. and G.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of K.C. and G.C. | D063867 |
| K.T., | |
| Appellant, | (Super. Ct. No. D511853) |
| v. | |
| G.C., | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, William H. McAdam, Judge.  Affirmed.

Bruce M. Beals, Stephen M. Hogan for Appellant.

Stephen Temko, Dennis Temko for Respondent.

K.T. (Mother) appeals the family court's judgment granting G.C.'s (Father) request

to modify a judgment concerning visitation with T.C., the couple's seven-year-old child.

Mother contends Father failed to show a significant change in circumstances to justify the modification. Mother further contends the trial judge was biased. We conclude the trial court did not err in granting father's requested modification, and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Visitation and Custody Plan Established in 2010*

Father and Mother married in 2005, and filed for dissolution of the marriage in 2008. In September 2008, Father requested that the court permit him an equal time share with T.C. However, in November 2008, based on a Family Court Services Report, the court ordered Father to have T.C. with him on alternate weekends and two mid-week periods of between five and six hours each. In December 2008, retired Judge Thomas Ashworth was assigned to the case as a privately compensated temporary judge for all purposes, and a social worker was ordered to make recommendations regarding visitation and custody matters.

Judge Ashworth rejected Father's request for an equal time sharing arrangement, concluding it was not in T.C.'s best interest because (1) Mother was the primary caretaker and Father's request was potentially disruptive to then four-year-old T.C.; (2) the present child sharing arrangement was working well under the circumstances; (3) Mother had more available time to spend with T.C., but Father was spending more time at his job; (4) on isolated occasions, Father had not properly supervised T.C., but Mother's supervision had been consistent and without serious incident.

2

The 2010 judgment established custody rights as follows: "The Father and Mother shall continue to share joint legal responsibility for the minor child," whose primary residence would continue to be with Mother. T.C. would spend 27 percent of her time with Father and 73 percent with Mother. The judgment set forth a detailed schedule for Father's visits with T.C. on alternating weekends and every other Monday and Thursday, plus holidays, and vacation. The judgment further states: "The receiving parent shall provide transportation on weekends. The Father shall be solely responsible for transportation for mid-week child sharing." The judgment provides: "This [judgment] is intended to be a final determination within the meaning of *Montenegro v. Diaz* (2001) 26 Cal.4th 249 [*Montenegro*]."

*Father's Request to Modify Custody and Visitation*

In December 2013, Father filed a request in superior court for modification of the 2010 judgment. Father used a judicial council form and checked boxes indicating he wanted to modify child custody, child support, and visitation. He attached an 11-page declaration specifying that he requested: (1) "an order that modifies our child sharing plan such that I have [T.C.] . . . on a substantially equal sharing basis"; (2) "[both parents shall] pay for our respective child care expenses"; (3) "[a modification of] the vacation and holiday sharing"; (4) "that the transportation of [T.C.] be equally shared"; and (5) "modification of child support that corresponds to any change in the child sharing percentage and that reflects our current incomes." Father stated in his declaration that T.C. was almost seven years old, and Father had remarried and had a three-year-old son and two step children. He indicated he would enroll T.C. in extracurricular activities,

3

noting he had changed his on-call schedule at work in order to have uninterrupted time with T.C.

*Mother's Dismissal Motion*

Mother moved to dismiss Father's modification motion, arguing Father had not shown any material change in circumstances. Mother claimed T.C. was attached to her, and Father's proposed modification would be "devastating" to T.C., who was thriving both academically and in extracurricular activities in part because T.C. had a predictable schedule.

Father opposed mother's motion to dismiss, specifying in a declaration various changed circumstances supporting his proposed modification of the 2010 judgment: First, "The most critical change is [T.C.] is now 7 years old and in school everyday from 7:30 a.m. to 2:10 p.m. Our current time-share was made when [T.C.] was just 2.5 years old and before she began school. . . . Most importantly, [T.C.] is changing, she [is] asking both [parents] why she cannot spend more time with me." Second, Mother was working more hours in the evenings, therefore, T.C. was spending more time with a nanny. Father explained that T.C. could spend more time with him instead, and thereby also reduce his child support expenses. Third, Father wanted T.C. to spend more time with Father's new wife, son, and step daughters.

The family court counselor interviewed Father and Mother and recommended no change in the judgment regarding joint legal custody. However, the counselor recommended denial of Father's request for "joint physical custody," reasoning, "Both parents report that [T.C.] is accustomed to and thriving on the current schedule;

4

additionally, the parents continue to experience the same barriers in their co-parenting relationship. [Judge Ashworth had] previously considered both parents['] schedules and . . . [T.C.] would benefit from continuing with the existing plan, as it provides stability and consistency, as well as frequent and continuing contact with both parents."

At the March 21, 2013 hearing on mother's motion to dismiss, Father reiterated his arguments in his declaration and added, "I know how important it is for a daughter and father to bond, so she can take those lessons and go out into the world. And I feel like I'm being denied the opportunity when [Mother] is not even around. [¶] So that's all I'm asking for. I want more time with [T.C.] I'm not taking away time from [Mother] because she is working. And I think it's best for [T.C.] to be with me in our home when [Mother is] working." Mother's attorney urged the court to adopt the counselor's recommendation denying Father's request for equal time sharing. The attorney rebutted Father's arguments: "There is absolutely nothing new here at all. There is no change of circumstances, other than an impassioned plea, which is the same thing we heard [in the proceedings before Judge Ashworth]. [¶] But what we are not hearing from [Father] is that by changing this circumstance, it's going to impact [Mother's] time and that is not what Judge Ashworth wanted. Judge Ashworth found, and it is in the statement of decision and the judgment, that [Mother] was the primary parent, and it was in [T.C.'s] best interests to reside primarily with [Mother]."

*Court's Rulings*

The family court denied Mother's motion to dismiss, ruling, "I find that there has been a significant change of circumstances alleged, and these are the following: The

5

passage of time, the change in [T.C.'s] school schedule . . . , the change in the work schedule by [Father], the remarriage of [Father], and the increase in age of the siblings of [T.C.]"

In April 2013, the court granted Father's motion to modify the visitation schedule, which the court noted would result in a "radical departure" from the 2010 judgment. The court acknowledged Mother was an "excellent" parent who had provided T.C. good care. Nevertheless, the court stated: "I have a father now who has come before me and who I can't help but compare to other fathers that I see. He's made or done the proper things. I rarely get a parent who has thought about what he needs to do, he or she needs to do, to be able to provide what I think is even going to be a better relationship with the parents. [¶] [Father has] come here with a plan that he's proposed. There's going to be a substantial time now that [T.C.], who obviously gets along with both parents and gets along with her new family on [Father's] side—I have nothing to indicate that there are any problems. [¶] So I found myself asking: Why wouldn't I change if [T.C. is] thriving under the present schedule? Because I honestly believe that all of the facts that I have reviewed and all of the considerations that I have made, that it is clearly in [T.C.'s] best interest to spend as much time as possible with both parents. [¶] I hope—I want it to work. The easiest orders that I make are orders for equal timeshare. Those are the easiest orders. They're the most difficult for parents to implement because it requires more communication and more cooperation than existed before."

Mother unsuccessfully filed a writ petition in this court seeking to prohibit implementation of the modified custody and visitation plan.

DISCUSSION

The parties disagree regarding the correct test the family court was required to apply to Father's request for modification, and whether it applied it properly. Mother contends the changed circumstances test applied, and the court erred in finding Father had presented sufficient evidence to support a modification of the 2010 judgment. By contrast, Father relies on our opinion in *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1382 (*Enrique M.*), and argues the court should have applied the best interests test because he sought to modify a visitation schedule, not the custody determination. He relies on his declaration attached to his motion. Father argues that, in any event, sufficient evidence supports the court's application of the changed circumstances test.

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest[s] of the child. The court and the family have 'the widest discretion to choose a parenting plan that is in the best interest[s] of the child.' (Fam. Code, § 3040, subd. (b).) When determining the best interest[s] of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Montenegro*, *supra*, 26 Cal.4th at p. 255, fn. omitted.) Child custody and visitation orders are reviewed on appeal for abuse of discretion. (*Ibid.*) "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest[s]' of the child. We are

7

required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).)

"[O]nce a final judicial custody determination is in place[,] [u]nder the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Montenegro*, *supra*, 26 Cal.4th at p. 256.) "The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest[s]. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.)

In *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513 (*Birnbaum*), the court held that when a court order does not change custody, but only modifies a parenting schedule, the changed circumstance rule does not apply. In *Birnbaum,* the court concluded there was no change in custody, but only a change in the coparenting residential arrangement. (*Ibid*.) The court rejected the mother's contention the trial court erred by not requiring the father to show changed circumstances. (*Ibid*.)

In *Enrique M.*, *supra*, 121 Cal.App.4th at page 1379, we stated: "[O]ur research has not [uncovered] any published California case in which a court has held that the

8

changed circumstance rule applies to a request to modify the allocation of parenting time, where a preexisting joint custody order was in place and custody was not at issue."  After discussing *Birnbaum*, *supra*, 211 Cal.App.3d 1508 and Burgess, *supra*, 13 Cal.4th 25, we concluded:  "[T]he standard of proof a parent sharing joint custody must meet to effect a change in parenting time is the best interest[s] of the child, not changed circumstances."  (*Enrique M.*, at p. 1373.)  In *Enrique M.,* the father and mother had joint physical custody of the child.  (*Id*. at p. 1382.)  The father requested the parenting schedule be modified to give him one extra overnight with the child each week and an additional overnight every other week.  (*Ibid*.)  We concluded:  "Although [the father's] proposed changes would alter the parenting schedule, in terms of potential instability for [the child], they were not on par with a request to change physical custody from sole to joint custody, or vice versa."  (*Ibid*.)  We held the changed circumstance rule did not apply.  (*Ibid*.)

In *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072, the court likewise concluded:  "[T]he changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa.  Instead, the trial court considers a request to change the parenting or visitation arrangement under the best interests of the child standard."  Citing *Birnbaum*, *supra*, 211 Cal.App.3d 1508 and *Enrique M.*, *supra*, 121 Cal.App.4th 1371, *Lucio* stated:  "The changed circumstance rule does not apply to a modification request seeking a change in the parenting or visitation schedule."  (*Lucio*, at p. 1077.)  "Unlike a change in custody, an alteration in a parenting or visitation schedule does not cause a disruption in ' "established patterns of care and emotional bonds with the

9

primary caretaker" ' [citation] justifying the added burden of demonstrating changed circumstances." (*Id.* at p. 1079.)  Because the father in *Lucio* did not seek a change in custody but only a change in the parenting schedule, *Lucio* concluded he was not required to show changed circumstances.  (*Id*. at p. 1080.)

Here, the parties' confusion regarding whether the changed circumstances rule applied to Father's modification request stems partly from the fact Father checked the box on the judicial council form indicating he was challenging both Judge Ashworth's custody and visitation determinations.  Further, at the hearing, the court described Father's request in equivocal terms as both "50-50 custody," and a request for "equal time share."  The family court also contributed to the confusion by stating in its order rejecting mother's motion to dismiss that it had found Father had shown "a significant change of circumstances."

We acknowledge that Father's indicating on the judicial council form that he sought a change of custody was misleading.  However, we do not focus on that in isolation.  Rather, we resolve this matter by looking at the gravamen of Father's modification request as set forth in great detail in his declaration attached to the judicial council form and the arguments made in the family court.  Father argued that the 2010 judgment had imposed 27 percent visitation on him, and he wanted to increase that to equal sharing time.  As set forth above, Father's prayer for relief also specified that he was seeking merely an increase of visitation time with T.C.  Moreover, the court's actual order did not address custody issues.  In fact, following the family court's adjudication, both parents continue to have joint legal custody of T.C., and Mother retains primary

10

physical custody of T.C. We conclude the court was not required to find changed circumstances, and to the extent it applied that standard, it erred. But the error did not prejudice Mother. We review a court's result, not its reasoning. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.)

Under the proper abuse of discretion standard of review, there is sufficient basis to affirm the court's order. The court stated in its order that it had reviewed all documents related to the motion and the case file; therefore, it was knowledgeable about the case. The court found "it is in the child's best interest to spend an equal amount of time with both parents. Since the last order regarding custody and visitation the father has made a substantial modification to his work schedule." The court had also noted at the hearing that T.C. had grown older, and had developed a good relationship with Father, to the point that she had requested of both parents that she spend more time with Father. The court found Father had established a new family and wanted T.C. to spend time bonding with her half-brother and his other family. These findings sufficed to support the court's decision to modify Father's visitation schedule. Therefore, the court did not abuse its discretion in granting Father's modification request.

Mother argues that the trial court's ruling constituted an impermissible collateral attack on the 2010 judgment. We disagree. As stated in *In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, even assuming for the sake of argument the trial court's ruling represented a collateral attack on a final judgment, "that attack was mandated by our Supreme Court in [(*Burgess*, *supra*, 13 Cal.4th 25)], which directed that a trial court should examine the de facto custody arrangement of the parties. [Citation.] That rule

11

was binding on the trial court and is binding on this court. [Citation.] [¶] Moreover, we think the Supreme Court's directive makes sense. A trial court is more likely to arrive at a fair and just adjudication of the parties' custody situation if it examines the realities of the present situation rather than the possible fictions of a prior order or judgment." (*Lasich*, at p. 717.)

Mother contends the trial court evinced a "subtle predisposition toward equal custody, irrespective of the evidence," based on its comments during the evidentiary hearing, including its question to Mother, " 'All [Father] wants is 50-50 custody, what's wrong with that?' " We reject the contention. In the context, the family court was respectful and openminded regarding both sides' arguments, and recognized its decision was difficult. Merely because a judge rules against a party in the course of the proceedings does not make the judge prejudiced against that party. (See *Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 500; *Haldrane v. Haldane* (1965) 232 Cal.App.2d 393, 395; Code Civ. Proc., § 170.2, subd. (b).)

DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.

_____
O'ROURKE, J.

WE CONCUR:


_____
McCONNELL, P. J.


_____
HALLER, J.