Filed 9/29/21  Walton v. Dunn-Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| GREGORY WAYNE WALTON, | C088480 |
| Plaintiff and Appellant, | (Super. Ct. No. FL61169) |
| v. | |
| KATLYN ROSE DUNN-WILLIAMS, | |
| Defendant and Respondent. | |

Appellant Gregory Wayne Walton and respondent Katlyn Rose Dunn-Williams are the biological parents of their son, born in 2015.  After a court trial at which Walton and Dunn-Williams testified, the trial court ruled that Walton had to satisfy several preconditions before he could have supervised visits with his son.  On appeal, Walton contends the trial court erred by failing to provide a court reporter for the trial—despite Walton's request for one—because Walton qualified for an initial waiver of court filing fees.  We agree, and vacate the trial court's ruling and remand for a new trial, at which an official court reporter must be furnished.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 2017, Walton filed a pleading in the trial court seeking to establish his parentage.[1]  The next day, the trial court granted Walton's request for a fee waiver.

On July 25, 2018, the trial court entered an interim custody order, and set a court trial date of October 4, 2018, "to deal with all issues pending."

A minute order from that October 2018 court trial states:  "[Walton] ask[ed] if there will be a court reporter.  The court inform[ed] [Walton] that the court is not required to provide a reporter in civil matters, it is up to the parties to hire their own."

The minute order also reflects that Walton and Dunn-Williams testified at the trial, and that Walton presented evidence from six additional witnesses.  The matter was taken under submission.

In an order filed on October 12, 2018, the trial court explained:  Walton and Dunn-Williams "both acknowledged that they are the biological parents of" their son, born in 2015; Walton "ha[d] not seen the minor child since" his arrest for human trafficking, one count of which he ultimately pleaded guilty to in 2017; Dunn-Williams "had no objection to [Walton] establishing a relationship with the child," but "request[ed]" that Walton "participate in counseling, attend church and that all visitation be supervised."

The trial court ordered that, "as a precondition to visitation," Walton had to "[s]atisfactorily complete a minimum of a 16 week parenting class," "[e]ngage in . . . counseling to address emotional and psychological issues," and "[p]rovide the court with documentation of" the parenting class and counseling.  The court further ordered:  "all

---

[1]    The pleading is not in the record on appeal, thereby compromising our review of this matter.  The record indicates that at some point Walton also sought some form of custody of his son.

2

visitation be supervised. Details of supervised visitation will be set by the court after all preconditions have been met."

Walton timely appealed.

DISCUSSION

Walton contends the trial court "completely erred in the . . . child custody trial in refusing and failing to provide [Walton] with the due process of a court reporter to officially document the details of [Walton's] child custody trial and all prior family law proceedings." Walton contends "[t]he evidence" from the trial and the trial court's nonprovision of a court reporter "warrant the relief of a new trial" and "revers[al] [of] all the trial courts judgments in this child custody case."

Respondent has not filed a brief.

We conclude the trial court prejudicially erred when it declined to furnish a reporter for the October 2018 court trial, after Walton, an in forma pauperis litigant, requested one.

But first, we address two threshold issues.

*The Record on Appeal*

In a related case, and before Walton filed his opening brief in this appeal, we affirmed a restraining order preventing Walton from seeing his son, because Walton failed to provide an adequate record on appeal, including the complained-of order. (*Walton II v. Dunn-Williams* (Oct. 7, 2019, C087424) [nonpub. opn.].) We warned Walton that, due in part to concerns for our own "independence and unbiased decisionmaking," he was "not entitled to special treatment by this court even though he is representing himself." (*Ibid.*)

Here, though the record on appeal is limited, it is adequate for our review of Walton's claim, as both the order complained-of, and an illuminating minute order from

3

the court trial, are in the appellate record.[2]  (Cf. *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933 ["While a record of the hearing would have been helpful to understand the trial court's reasoning, it is not necessary here where . . . the appellate record includes the trial court's written orders"].)

Further, the phenomenon of this limited record is inextricably intertwined with Walton's claim on appeal.

*Appealability*

Walton's statement of appealability says, "[t]his order is appealable by the Family Code given that it is a final judgment to determine child custody and visitation."

"[S]ince the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion."  (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.)

"It is settled that the right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute.  [Citation.]  In civil matters, Code of Civil Procedure section 904.1 is the main statutory authorization for appeals.  Code of Civil Procedure section 904.1, subdivision (a) provides in relevant part that an appeal may be taken from:  a final judgment (subd. (a)(1)); an order made after an appealable judgment (subd. (a)(2)); or 'an order made appealable by the provisions of the Probate Code or the Family Code' (subd. (a)(10))."  (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377.)

---

[2]    In his notice designating the record on appeal, Walton elected to use a settled statement of oral proceedings in the trial court, as the oral proceedings were not reported by a court reporter.  (See California Rules of Court, rule 8.137.)  But, it appears that Walton never served and filed a proposed statement in the trial court within 30 days after filing such notice.  (*Id.*, rule 8.137(c)(1).)

A handwritten entry on the October 2018 minute order is the sole indication in the record that:  (1) Walton asked for a court reporter, and (2) the court ruled it was "not required to provide a reporter," but that Walton could "hire [his] own."

We are satisfied that the October 12, 2018 order is appealable either as (1) a final judgment as to custody, or (2) an appealable "collateral order" that directs Walton to satisfy multiple preconditions before supervised visitation is permitted. (Cf. *Enrique M. v. Angelina V., supra*, 121 Cal.App.4th at p. 1378 [exercising appellate jurisdiction over an appeal from a custody order entered after a contested hearing, because the order "constituted an appealable 'final judgment[] as to custody' "]; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561-562 [noting "[o]ne exception to the 'one final judgment' rule codified in Code of Civil Procedure section 904.1 is the so-called collateral order doctrine," which asks, in part, whether an order "direct[s] . . . the performance of an act by" appellant]; *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1089-1090 [*temporary* child custody orders are not appealable].)

*Analysis*

"Under California's in forma pauperis doctrine and Government Code section 68086, subdivision (b), a person who because of limited financial resources qualifies for a waiver of initial court filing fees is entitled, as well, to a waiver of fees for the attendance of an official court reporter at a hearing or trial." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 598, fn. omitted (*Jameson*).)

In *Jameson*, the superior court, in seeking to meet a budget crisis, implemented a policy of not providing court reporters in most civil cases, although parties could still hire their own reporters if they could afford to do so. (*Jameson, supra*, 5 Cal.5th at p. 598.) Due to that policy, at a hearing held 10 days before trial, "the trial court orally informed the parties . . . that 'the Court no longer provides a court reporter for civil trials, and that parties have to provide their own reporters for trial.' " (*Id.* at p. 600.)

The Supreme Court reversed, ruling that—in light of the plaintiff's in forma pauperis status (reflected by an initial fee waiver on file (*Jameson, supra*, 5 Cal.5th at p. 600))—the "challenged court policy create[d] the type of restriction of meaningful access to the civil judicial process that the relevant California in forma pauperis

5

precedents and legislative policy render impermissible." (*Id.* at p. 599; see *id.* at pp. 622-623 ["Without an exception for fee waiver recipients, the policy at issue here places indigent civil litigants at a significant disadvantage with respect to the right of appeal compared to those litigants who can afford to pay for a private shorthand reporter"].)

The error was not harmless, the *Jameson* court concluded, because without a reporter's transcript, the court could not analyze whether the trial court's substantive ruling was correct. (*Jameson, supra*, 5 Cal.5th at p. 625.)

*Dogan v. Comanche Hills Apartments, Inc*. (2019) 31 Cal.App.5th 566 (*Dogan*) followed and applied *Jameson* under similar circumstances. There, an in forma pauperis plaintiff was denied a requested waiver of fees to provide a court reporter at trial. (*Dogan,* at p. 568.) After the plaintiff completed her presentation of evidence at trial, the trial court granted defendant's motion for a nonsuit. (*Ibid.*)

The appellate court applied *Jameson* retroactively, and ordered a reversal for a new trial, explaining: "Because there is no way to now provide a reporter for a trial that has already occurred, we have no choice but to reverse and remand for a new trial at which an official court reporter will be furnished." (*Dogan, supra*, 31 Cal.App.5th at p. 568.) As in *Jameson*, the error was not harmless. (*Dogan,* at p. 570 ["In light of *Jameson*, we cannot fairly conduct our review without a reporter's transcript"].)

Here, as in *Jameson* and *Dogan*, the trial court erred in denying an in forma pauperis plaintiff's request for a court reporter at trial.[3] Since Walton had already obtained an initial fee waiver, the request should have been granted.[4] (Gov. Code,

---

[3]     We note the trial occurred three months after publication of *Jameson*.

[4]     Nothing in the record (i.e., the register of actions) indicates that Walton's in forma pauperis status was ever withdrawn, much less revisited. (Cf. Gov. Code, § 68636, subd. (b) [if, after granting the initial fee waiver, the court "obtains information . . . suggesting that a person whose fees and costs were initially waived is not entitled to a fee waiver, or that the person's financial condition has changed so that he or she is no longer eligible for

6

§ 68086, subd. (b) [providing that the fee for a court reporter shall be waived for a person with an initial fee waiver]; *Jameson, supra*, 5 Cal.5th at pp. 598-599.)

This error was prejudicial, as "we cannot fairly conduct our review" of Walton's attack to the challenged order, given that we do not know what the trial testimony was. (*Dogan, supra*, 31 Cal.App.5th at p. 570.)

Accordingly, we shall vacate the October 12, 2018 ruling and remand for a new trial at which an official court reporter must be furnished.[5]

---

a fee waiver," the court may require the person to appear and "provide reasonably available evidence, including financial information, to support his or her eligibility for the fee waiver"].)

[5] To the extent that Walton is seeking reversal of *other*, earlier, rulings by the trial court, due to the nonprovision of a court reporter we reject those claims, as the limited record reflects only that Walton requested, and the trial court refused to provide, a court reporter on October 4, 2018. (See *Jameson, supra*, 5 Cal.5th at p. 599 ["an official court reporter, or other valid means to create an official verbatim record for purposes of appeal, must generally be made available to in forma pauperis litigants *upon request*"].)

To the extent Walton seeks reversal of the trial court's denial of a change of venue motion (apparently denied on the same day as the trial) on the basis of the nonprovision of a court reporter, we reject this undeveloped claim. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["appellant's brief 'must' '[s]tate each point under a separate heading or subheading summarizing the point . . . .' [Citations.] This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass' "].)

DISPOSITION

The trial court's October 12, 2018 ruling is reversed. Walton is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　BLEASE, Acting P. J.


We concur:


　　　　/s/
ROBIE, J.


　　　　/s/
MURRAY, J.