Filed 9/9/16  Marriage of Daniel P. and Sandra L. CA1/4
Received for posting 9/12/16

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of DANIEL P. and SANDRA L. | |
| DANIEL P., Appellant, v. SANDRA L., Respondent. | A143622 (Contra Costa County Super. Ct. No. MSD08-00085) |

Appellant Daniel P. (Father) and respondent Sandra L. (Mother) are the parents of a son (Son) who was born in 2007.  Father initiated marital dissolution proceedings in 2008, and the trial court entered a judgment of dissolution of Father's and Mother's marriage in March 2013.  In October 2009, the trial court, after a bifurcated trial on the issue of child custody and visitation, entered an order and statement of decision (the 2009 order) stating Father and Mother have joint legal and physical custody of Son, and establishing a detailed schedule governing when Son will reside with each parent.  Pursuant to the 2009 order, Son resides primarily with Mother in Sacramento and attends school there.

Father, who lives in Concord, filed a motion in 2014 to modify the parenting schedule and to be declared Son's school parent.  The trial court denied the motion, finding Father had not shown that the proposed modification was justified by a change of

1

circumstances, *or* that the proposed modification was in Son's best interest.  On appeal, Father, proceeding in propria persona, contends the court did not apply the correct legal standards, abused its discretion, and erred by failing to hold a "long cause" hearing on the motion.  We affirm.

## I.  BACKGROUND

### A.     The 2009 Order

The 2009 order states Father and Mother have joint legal and physical custody of Son, and specifies when Son will reside with each parent.  Specifically, the 2009 order states Son will reside with Father at specified times, and will reside with Mother at all other times.  The 2009 order states Mother may enroll Son in a preschool near her home on or after his third birthday and specifies accompanying revisions to the schedule.  The 2009 order also specifies a revised schedule that would become applicable upon Son's entry into kindergarten (which occurred in fall 2013).  Pursuant to that schedule, Son spends the first, third and fifth weekends of the month with Father, as well as four hours on Wednesday afternoons.  Finally, in addition to allocating Son's time during ordinary weeks, the 2009 order provides each parent may take a one-week summer vacation with Son, and specifies which parent will spend each major holiday with Son (in some instances alternating between even- and odd-numbered years).

### B.     Father's 2012 Motion to Modify the 2009 Order

In 2012, Father filed a motion to change Son's school situation.  The motion apparently sought to change the location of Son's schooling from Sacramento to Walnut Creek or Concord, based in part on alleged delays in Son's educational progress.  After a trial, the trial court denied the motion.

In its order after trial, entered in February 2013 (the 2013 custody order), the court stated that the 2009 order "was a final custody order requiring a significant change in circumstances to modify," and the court found no such change had been established.  In the 2013 custody order, the court found, based on the evidence presented, that Father's motion was "not one about school choice, because if it had been, there are schools where [Mother] lives in Sacramento that could have been considered but were not."  The court

2

concluded Father's request to change schools "was in fact a thinly disguised attempt to change the entire custody order, which the court deem[s] inappropriate under the facts of this case." The court found that Son's "possible slight [learning] delay speaks in favor of maintaining the current custody arrangement so as to maintain consistency . . . ."

In addition to finding no change of circumstances justifying a change in the custodial arrangement, the court found in the 2013 custody order that such a change would be detrimental to Son's best interest, and that Father's request therefore failed "even under a best interest analysis as opposed to a significant change in circumstance standard . . . ." Based on its findings, the court ordered that Mother "is confirmed as the person who has the authority to make school choices for" Son. The court ordered that the "[c]urrent custody order and schooling [i.e., the 2009 order] shall remain in place," and that Son "is to attend school in [Mother's] district, not [Father's]."

In a subsequent order entered in March 2013 (the 2013 sanctions order), the court imposed $25,000 in sanctions on Father in connection with his filing of the 2012 motion to change schools. In the portion of that sanctions order that is included in the appellate record, the court stated Father's 2012 motion "was not brought in good faith and was merely an attempt to change custody" based on his ongoing objections to the "detailed, thorough custody decision" set forth in the 2009 order. The court found Father was not reasonable and did not attempt to compromise on schools in Sacramento, but "went straight to litigation" because he was determined to have Son attend school in Concord.[1]

---

[1] In January 2015, while the instant appeal was pending, the trial court found Father guilty of contempt for failing to comply with the 2013 sanctions order. Father appealed the contempt order in March 2015 (No. A144501). This court dismissed that appeal, noting contempt orders and judgments are not appealable. In November 2015, Father filed a writ petition challenging the contempt order (No. A146722); this court denied the petition.

In another appeal arising from the trial court proceedings in this matter, Father filed a notice of appeal in 2011, challenging a child support order entered by the trial court (No. A132269). That appeal was dismissed after Father failed to file an opening brief.

**C.     Father's 2014 Motion to Modify the 2009 Order**

**1.     Father's Motion**

In June 2014, Father, proceeding in propria persona, filed a motion seeking modification of the visitation schedule set forth in the 2009 order and asking to be designated Son's school parent.  In his motion, Father asked the court to order Mother to show cause why it is not in Son's best interest to "spend more parenting time" with Father.  Father proposed that the parties continue to have joint legal and physical custody, and that Mother have visitation with Son two afternoons per week, as well as the first, third and fifth weekends of each month, and one-half of Son's "school holiday[s] and summer vacations."  In a brief and declaration submitted in support of his request, Father argued Son has unmet academic needs and would fare better at Father's chosen school in Concord.  Father also contended (1) Mother has a "history of unacceptable violent physical contact" with Father in Son's presence, and (2) Father will facilitate frequent contact between Son and Mother, while Mother has resisted Father's efforts to spend more time with Son.

In addition to his own declaration, Father submitted a declaration from Nina Casella, the director of education at Sylvan Learning Center (Sylvan) in Walnut Creek.  According to Father's and Casella's declarations, Father first took Son to Sylvan in November 2012 (when he was five years old) for an assessment of his language skills, in part to determine whether he would be ready to begin kindergarten in the fall of 2013.  Based on that assessment, Casella concluded Son was "significantly trailing the national average in phonics (the ability to hear and manipulate sounds) and recognizing letters on sight."  Casella did not recommend holding Son back from starting kindergarten, but recommended that he participate in four hours of tutoring per week at Sylvan or a reasonable substitute to help him catch up on his language skills.

Father and Casella stated in their declarations that, beginning in February 2013, Father took Son to Sylvan for tutoring approximately every other weekend, for about three hours.  Son was again assessed at Sylvan in April and May 2014 (when he was six and one-half years old), after about 15 months of tutoring.  Based on this assessment,

Casella concluded Son had made much progress but was still significantly behind in certain of his language skills. Specifically, Casella concluded Son trailed the national average in phonics (which affected his overall reading comprehension), recognizing irregular "sight words," and "overall independent story reading abilities." Casella recommended additional tutoring during the summer of 2014 and during first grade. Casella did not recommend holding Son back from starting first grade in the fall of 2014 provided he received the recommended summer tutoring. Casella believed that, without the recommended tutoring, Son could fall further behind, ultimately making it possible that he would have to be held back a year of school at some point in the future. Father stated that, if he were designated Son's school parent, he would enroll Son in a school in Concord that is close to Father's home and has a better student-to-teacher ratio than the school Son attends in Sacramento.

Finally, Father submitted a declaration from Michelle Wishart, a private investigator whom Father engaged to conduct a "surveillance investigation" of Mother. Father argues Wishart's reported observations show that Mother has employed a nanny to help care for Son, and that Mother also relies on her sister and other mothers for assistance.

### 2. Opposition and Reply

In July 2014, Mother filed (1) a request to "dismiss" Father's motion on the ground it was barred by the court's prior rulings on custody, visitation and schooling issues, and (2) an opposition to Father's motion. Mother requested that the court deny Father's motion, order Father not to conduct any further educational assessments of Son, and require Father to pay Mother's attorney fees and costs incurred in responding to Father's motion. Mother argued Son's school in Sacramento is excellent and is meeting his needs. Mother stated Son's teachers for his kindergarten year concluded his performance was "satisfactory plus" and recommended his promotion to first grade. Mother disputed Father's allegation she had engaged in violent behavior.

5

Father filed a reply memorandum and a supporting declaration. With his declaration, Father submitted audio and video recordings of interactions between himself and Son, and between himself and Mother.

### 3. The Trial Court's Ruling

At the August 7, 2014 hearing on Father's motion, the trial court placed Father and Mother under oath. Father stated his position that Son needed additional educational assistance and that Father's chosen school in Concord could better provide such assistance. Father also stated that, if he were Son's school parent, he would be available before and after school to help Son with his homework, and would continue to have Son participate in tutoring at Sylvan.

At the conclusion of the hearing, the court denied Father's motion; on September 16, 2014, the court entered a written order denying the motion. The court concluded Father's request to become Son's school parent (and to move Son from a Sacramento school to a Concord school) was in substance a request to change the existing custodial arrangement. The court stated that, even if it credited the evidence submitted by Father, that evidence did not establish a change in circumstances justifying a change in the custodial arrangement. The court further concluded that, even if it applied a "best interest" standard and credited Father's evidence, that evidence did not show the proposed change would be in Son's best interest. The court stated the evidence submitted by Father about academic difficulties did not support changing Son's school or primary residence. The court stated: "What [that evidence] suggests, if anything, is that [Son] may need some additional help in the school that he's at. There['s] nothing that's been put forward to suggest that it can't be done at the school that he's at." The court stated, "since I'm making those findings even crediting [Father's] evidence, there's no reason to have a long cause hearing." The court denied requests by Mother for sanctions, for an order prohibiting Father from conducting surveillance of Mother, and for an order prohibiting Father from recording Son. Finally, the court directed the parties to participate in mediation about scheduling for holidays and summer vacations.

6

Father appealed the court's September 16, 2014 order. The appeal is proper as an appeal from an order made after a final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377–1378.)

## II. DISCUSSION

" 'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' [Citation.] Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) " ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182.)

Father's principal contention on appeal is that he was not required to demonstrate changed circumstances to obtain a modification of the parenting schedule and designation as Son's school parent, and instead the applicable inquiry was whether such a change would be in Son's best interest. This argument provides no basis for reversal.

A family law court generally retains jurisdiction to make or modify custody orders throughout a child's minority, even after the court enters a judgment of marital dissolution. (Fam. Code, § 3022;[2] *In re Marriage of Kreiss* (2004) 122 Cal.App.4th 1082, 1085.) "In making an initial custody determination, the court must make an award that is in accordance with the best interests of the child." (*In re Marriage of Loyd* (2003) 106 Cal.App.4th 754, 758; § 3040, subd. (c).) "When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents. (§ 3011.)" (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 255.)

Once a final judicial custody determination is in place, a party seeking to modify the custody order must demonstrate "a significant change of circumstances justifying a

---

[2] All statutory references are to the Family Code unless otherwise stated.

7

modification." (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256.) The "changed-circumstance rule" is not a separate test, but is "an adjunct to the best-interest test." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.) The changed-circumstance rule does not apply, however, when a parent seeks only to change the parenting schedule or a child's school situation, but does not request modification of the existing custody arrangement. (*Enrique M. v. Angelina V., supra,* 121 Cal.App.4th at pp. 1379–1380, 1382; see *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077.) In that circumstance, the court is to apply the best interest test. (*Enrique M. v. Angelina V., supra,* 121 Cal.App.4th at p. 1382.)

Here, the 2009 order specifies Mother and Father have joint legal and physical custody of Son. Father has not expressly requested a change in the custodial arrangement. In the Request for Order (on Judicial Council Form FL-300) that Father submitted in connection with his June 2014 motion, he checked boxes stating he sought to modify visitation and to be designated Son's school parent; he did not check the box indicating a desire to change custody. (See *Enrique M. v. Angelina V., supra,* 121 Cal.App.4th at p. 1382.)

Mother argues the changed-circumstance rule nonetheless should apply here. Mother contends that, under the "de facto custody arrangement" in this case, the parties do not have joint physical custody; instead, Mother has sole physical custody and Father has visitation. Mother contends moving Son to a Concord school as requested by Father would change the existing custodial arrangement, because Son would need to stay with Father in Concord most of the time. (See *In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 759–760, 762 [in the context of a custodial parent's proposed relocation, the appropriate standard for determining custody "depends on whether the parent seeking to relocate has sole or joint physical custody"; when the parent seeking to relocate "had what was effectively sole physical custody," the other parent had to show changed circumstances to modify custody].)

We need not determine whether Father had to show changed circumstances. The trial court found that, even applying the best interest standard and even crediting Father's

evidence, there was no indication that moving Son to a Concord school (and thus significantly changing the allocation of parenting time) would be in Son's best interest. Father has not shown the court abused its discretion in reaching this conclusion.

Father states in his appellate brief that his "main reason for seeking to be [Son's] primary and school parent" is his concern about Son's language skills. But the evidence Father presented as to Son's academic needs did not require the trial court to conclude that moving to a school in Concord was in Son's best interest. As noted, the evidence presented by Father suggested that, when Son was assessed by Sylvan in April and May 2014, he had made much progress since his prior assessment (in November 2012), but was still behind the national average in certain language skills. The trial court reasonably concluded, however, that this evidence, while suggesting Son might need some additional assistance at his current school, did not show that changing schools would be in his best interest. As the court noted, there was no evidence showing that any extra assistance needed by Son could not be obtained at his current school.

In his appellate brief, Father also contends briefly that the trial court erred by not scheduling his motion for a " 'long cause' " hearing, which Father contends would have allowed him to "develop his case" or "present more detailed evidence."[3] But Father does not develop this argument or cite any legal authority suggesting the trial court was required to hold a long cause hearing in the circumstances of this case. Father thus has forfeited this claim of error.[4] (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court "will not develop the appellants'

---

[3] A "long cause" hearing is one that is estimated to take longer than 20 minutes. (See Super. Ct. Contra Costa County, Local Rules, rule 5.4(b)–(c); Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶ 5:487, p. 5-221.)

[4] Father makes no claim that the court was required to hear live testimony pursuant to section 217, and the record does not show Father submitted a list of nonparty witnesses as required by that statute. (§ 217, subds. (a), (c); California Rules of Court, rule 5.113(a), (e).)

arguments for them"].)  To the extent Father suggests the court summarily "dismiss[ed]" his motion at Mother's request, the record does not support his characterization.  The court heard and denied Father's motion on the merits—after hearing from Father under oath—ultimately concluding it did not need to hold a long cause hearing to resolve the matter, and denying most of the relief requested by Mother.  Any suggestion that Father's motion was addressed in a peremptory fashion is inaccurate.

Father's remaining appellate arguments are not persuasive.  Father contends briefly that (1) on three occasions between 2008 and 2013, Mother engaged in "violent" or inappropriate physical contact with Father in Son's presence, and (2) Mother has demonstrated hostility toward Father's relationship with Son.  The evidence Father submitted on this point—including audio and video recordings of certain interactions between Father and Mother and between Father and Son—did not require the court to conclude a change in Son's school situation (and an accompanying major change in the parenting schedule) would be in Son's best interest.[5]

Finally, Father suggests there is some inconsistency between the court's denial of his motion to become Son's school parent and the court's order directing the parties to participate in mediation about possible changes to the parenting schedule during holidays and school vacations.  Father again cites no authority in support of this argument, and he therefore has forfeited it.  In any event, the court reasonably could conclude that, although changing Son's school situation was not in his best interest, adjustments to the

---

[5] In the 2009 order, the trial court discussed the video recording of the 2008 incident between Father and Mother, and expressly found that Mother did not engage in domestic violence.  This court has reviewed that recording and the other ones submitted to the trial court by Father in connection with his 2014 motion.  Nothing on the recordings persuades us that the trial court abused its discretion by denying Father's motion.

10

holiday and vacation schedule might be appropriate.  The court did not abuse its discretion.[6]

### III.  DISPOSITION

The court's September 16, 2014 order is affirmed.  Mother shall recover her costs on appeal.

_____

Streeter, J.

We concur:

_____

Reardon, Acting P.J.

_____

Rivera, J.

---

[6] Because we affirm on the ground that the court did not abuse its discretion, we do not address Mother's arguments that Father's request for relief is barred by res judicata or by the disentitlement doctrine.