Filed 9/13/22  Marriage of Hutchins CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of JARED and DANA HUTCHINS. | D078855 |
| JARED HUTCHINS, Respondent, v. DANA HUTCHINS, Appellant. | (Super. Ct. No. 19FL004465C) |

APPEAL from an order of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Reversed and remanded.

Minella Law Group, Kathy A. Minella and Elizabeth A. Lefiti for Appellant.

Cage & Miles and John T. Sylvester for Respondent.

I.

INTRODUCTION

Appellant Dana Hutchins[1] appeals an order entered by the trial court after a bifurcated evidentiary hearing at which the court considered Dana's request for a domestic violence restraining order and respondent Jared Hutchins's request for an order regarding custody of the couple's two young children.

After finding that Jared had perpetrated domestic violence through "harassment" in the form of his frequent complaints to Dana's superior officers in the United States Navy[2] as a means to "control" Dana, the court determined that it would not issue a restraining order against him. In the court's estimation, Dana's safety "would no longer be endangered if the court failed to make the orders." In reaching this conclusion, the court noted that the temporary restraining order that had been in place "has served its purpose" in that Jared appeared to have stopped his harassing conduct. The court further noted that, at the time of the hearing, the parties were separated and living in the United States.

Despite having found that Jared had engaged in harassment that met the definition of domestic violence sufficient to support the issuance of a

---

1    Dana was identified in the trial court as "Dana Hutchins," and the caption for this case, as well as the records provided on appeal, identify her as "Dana Hutchins." However, in her briefing on appeal, Dana refers to herself as "Dana Loney." We refer to her here, initially, as Dana Hutchins, consistent with the caption in the appeal and the documents in the record. However, we will refer to the parties by their first names throughout this opinion for purposes of clarity.

2    At the time of the harassing conduct, Dana was stationed overseas in Italy.

domestic violence restraining order, the trial court proceeded to address "child custody and parenting time," without acknowledging the presumption imposed by Family Code section 3044 (section 3044). Section 3044 establishes a mandatory rebuttable presumption that an award of joint or sole custody to a parent who has perpetrated domestic violence is not in a child's best interests. (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415.)

After the court rendered its custody order, Dana's attorney sought clarification as to whether the court had, in fact, made a finding that Jared had perpetrated domestic violence. In response, the trial court affirmed that it had made such a finding. The court then immediately stated that it was finding that it was "in the best interest of the children to order ultimately the 50, 50 custody and overcome the 3044 presumption."

On appeal, Dana contends that the trial court erred by failing to comply with the requirements of section 3044. She notes that the statute requires that the presumption be rebutted before custody issues are determined and argues that the trial court improperly made its custody order *before* making a finding that the section 3044 presumption had been rebutted. She further contends that the trial court failed to place on Jared the burden of demonstrating by a preponderance of the evidence that the presumption had been rebutted, despite section 3044's direction that the burden be placed on the perpetrator of the domestic violence. In addition, Dana points out that the trial court also erred in specifically relying on the general policy preference favoring "frequent and continuing contact with both parents" in determining what was in the best interests of the children, in contravention of section 3044's prohibition against the use of this general policy preference to rebut the section 3044 presumption. Finally, Dana contends that the trial court erred in failing to address the seven factors set out in subdivision (b)(2)

3

of section 3044, which it was required to address on the record, and also erred in failing to articulate, on the record or in writing, its reasons for finding that the presumption under section 3044 had been rebutted.

We agree with Dana that the trial court erred in failing to comply with the statutory requirements set out in section 3044. We therefore reverse the trial court's custody order and remand the matter for the court to hold a hearing and enter an order in compliance with the requirements of section 3044.

## II.

## BACKGROUND

Dana and Jared were married on January 8, 2011. The parties share two children, one of whom was born in 2014 and the other in 2016.

Jared filed a Petition for Dissolution of Marriage on April 12, 2019. In late July 2019, Jared filed a request for order (RFO) seeking to have the court decide issues of child custody and visitation, child support, and spousal support. Jared requested joint legal custody of the children, and sole physical custody with visitation for Dana. At the time Jared filed his RFO, Dana was serving in the United States Navy and was stationed in Italy.[3]

The parties participated in a mediation at Family Court Services in September 2019.

The trial court held an initial hearing on the issues of child custody and child support on December 20, 2019. The court set an evidentiary hearing for

---

[3] When Dana was initially stationed in Italy in January 2018, Jared also moved there. Jared returned to the United States in February 2019, while Dana and the children remained in Italy. After Jared returned to the United States, he would travel to Italy for varying periods of time. His final visit began in April 2020. Dana returned to the United States twice between August 2019 and May 2020. In late August 2020, when Dana's tour ended, Dana, Jared, and the children all returned to the United States.

May 8 and May 11, 2020. The Register of Actions in the trial court indicates that no evidentiary hearing was held on these dates.[4]

On May 12, 2020, Dana filed an initial request for a Domestic Violence Restraining Order (DVRO). According to a declaration submitted by Dana in the trial court in support of a second request for a DVRO, the trial court denied her first request for a DVRO because the court determined that it did not have jurisdiction to decide the issue, given that Dana and the children were living in Italy at the time.

Dana, Jared and the children returned to San Diego from Italy at the end of August 2020. On August 31, 2020, the parties appeared before the court on an ex parte basis pursuant to Jared's ex parte request for changes to the temporary custody arrangement. The trial court determined that the custody and visitation issues did not constitute an emergency and would be addressed during a long-cause hearing that the court scheduled for October 28, 2020.

The parties participated in a second mediation with Family Court services on September 24, 2020. The Family Court Services mediator recommended that the children reside primarily with Dana, and that Jared have weekly visitation, including overnight visits.

At the October 28, 2020 hearing, the Court issued an interim custody order, pursuant to which the parties were to share joint legal custody of the children, Dana would have primary physical custody, and Jared would be entitled to weekly visitation, including overnights. The court continued the matter to December 21, 2020.

---

[4] The record indicates that the hearing that was scheduled to begin on May 8, 2020 was cancelled as a result of the Covid-19 pandemic.

Appellant filed her second request for a DVRO on November 13, 2020. Dana alleged that in 2018, Jared began contacting her superior officers and falsely accused her of having an affair with a coworker. Dana further alleged that Jared continued a pattern of contacting her superior officers, often with allegations that she was abusing him or the children, or that she was preventing him from seeing the children. According to Dana's declaration, Jared's repeated contacts with her superior officers was "placing [her] career in jeopardy," and "disrupt[ing] [her] peace of mind and [her] safety."

The court issued a temporary restraining order pending a full hearing and set the hearing for December 1, 2020. The matter was subsequently continued in order to be heard in conjunction with the hearing on Jared's RFO regarding custody, which was set for December 21, 2020.

The trial court held a joint evidentiary hearing on Jared's RFO regarding custody and Dana's request for a DVRO on December 21, 2020. Closing arguments occurred on December 28 and the court ruled on that date.

At the outset of the hearing on December 21, the trial court informed the parties that if the court were to make a finding that domestic abuse had occurred, then the rebuttable presumption in Family Code section 3044 that an award of joint custody would be detrimental to the children would arise, and the court would have to view the child custody issues through that lens.

Dana called Nancy Estrada, one of her former supervisors in the Navy, to testify at the hearing.[5] Estrada testified that she supervised Dana

---

[5] We provide only a brief summary of the witness testimony given at the evidentiary hearing because there is no challenge to the trial court's factual findings and the underlying facts are no more than minimally relevant to the issues raised on appeal.

through an intermediary supervisor. According to Estrada, Jared had contacted her directly on a number of occasions. He told Estrada that "he was concerned about emotional abuse and withholding finances," on Dana's part and also indicated that he thought that Dana "might be having an affair."[6] Estrada testified that because of Jared's communications with Dana's supervisors, Estrada was "required" to "go through [Dana's] finances [at the Fleet and Family Service Center] to ensure that [Dana] was providing adequate support [to Jared]." Estrada indicated that it had been determined that Dana was providing Jared with adequate financial support. Estrada also testified that Jared had filed a complaint against Estrada, alleging that Estrada "showed favoritism to the chiefs on base and did not hold them accountable."

Estrada testified that the amount of involvement she had in the parties' disagreements was "certainly more than normal." Jared had also tried to arrange an appointment with the commanding officer. According to Estrada, a meeting with the commanding officer regarding a divorce proceeding is not a normal or routine occurrence.

Dana testified that she was surprised and confused when she learned that Jared had opened a case through the military to investigate the financial support that she had been providing to him because she thought they had agreed as to how their financial resources would be allocated. She explained that as a result of Jared's contacts with her superior officers, she was "forced . . . to, essentially, overcommunicate what was going on in my personal life and embarrass myself on a daily basis."

Dana testified that Jared had engaged in continuing contact with her command throughout the time that she was stationed in Italy. In April 2020,

_____

6    Estrada indicated that Jared failed to provide evidence of an affair.

Jared indicated that he wanted to stay with Dana in her home in Italy, but she did not feel comfortable with this plan. She tried to reach an agreement with him about finding a different place for him to stay. Jared had made remarks to her about her "command know[ing] that any implicit or explicit claim [about him] posing any sort of safety risk to anything but your pride is completely unfounded." This made Dana feel that she could not go to her command for assistance. Ultimately, when Jared returned to Italy that April, Dana rented another home where she stayed while Jared was staying in the home in which she had been living.

According to Dana, at the time of the hearing regarding the DVRO and custody issues, the parties were utilizing the custody and visitation scheme set forth in the report and recommendation from Family Court Services filed on September 28, 2020. In Dana's view, the exchanges were going well, and the children had "done great" in adjusting to the schedule. Dana was requesting that the current schedule remain in effect.

Jared testified regarding his version of the same events about which Dana had testified. Jared stated that between November 2014, when the parties' first son was born, until August 2016, he was the primary caretaker of the children. According to Jared, he left Italy in February 2019 "[b]ecause up to that point, I had been in a situation with us being divorced that was just emotionally abusive and financially controlling, and we could not come to an agreement about how to cohabitate and coparent." Jared believed that his contact with Dana's chain of command was "appropriate." Jared testified, "particularly overseas, they play a larger role because we are separated from other civil mechanisms of support." Jared also indicated that it was his impression that his communications with the chain of command were "welcomed."

8

Jared acknowledged that he had contacted Dana's chain of command in March 2020 with respect to his planned return to Italy in April 2020, but that he had not informed Dana of his planned return until April 6, 2020, just prior to his arrival.

Jared testified that it is his belief that "in general, [the children] not having time with me is something that injures them and puts them in a place where they are not happy." Jared also testified that he disagreed with aspects of Dana's parenting. However, when questioned about whether he had raised his concerns directly with Dana, he testified that "[b]ased off [his] previous experience in [the] marriage," he did not "offer critiques of Dana about anything."

The attorneys for both parties presented closing arguments on December 28, 2020. Upon the conclusion of the closing arguments, the trial court immediately issued its orders regarding Dana's DVRO request and Jared's request for an order regarding child custody.

With respect to Dana's request for a DVRO, the Court found that a domestic relationship existed between the parties under Family Code section 6211. The court noted that, by their own admission, the parties had a prior history of domestic violence involving physical violence, but the court indicated that this conduct had occurred "much prior to this." The court noted that there were not "currently any issues of physical violence going on."

The court proceeded to discuss the fact that Jared's initial contacts with Dana's military command had begun in an appropriate manner. However, the court found that as time progressed, Jared's use of the military system to try to redress personal issues between him and Dana while they were in Italy became inappropriate and constituted harassment:

"And at some point there began to be this escalation of involving the military. . . . But at some point that escalation turned into where he's contacting the military even before he's contacting Ms. Hutchins. And that certainly occurred in April when he made a plan to come back before he even told Ms. Hutchins about that. He was letting the military know that he was coming. And that's where it starts to become, as far as the evidence showed, more of a use of the military to get what Mr. Hutchins wanted. And that is a form of coercion, that is a form of control, and it certainly was impacting Ms. Hutchins. And so it does seem that there was some control that was going on there. . . . So yes, I believe that there was harassment that went on. I also think it was situational. So really the court is making a finding that there has been this form of harassment, this form of domestic violence."[7]

After making this finding, the court proceeded to discuss its determination regarding whether a DVRO was necessary to prevent further abuse. The court concluded that a DVRO was not necessary, stating:

---

[7]    In the minute order issued in connection with the court's December 28, 2020 rulings, the court stated the following with respect to its findings regarding Jared's conduct:

"Thus, the Court finds the respondent has met her burden of proof [for purposes of requesting a domestic violence restraining order] by a preponderance of the evidence, as the Court notes pursuant to F[amily] C[ode] 6203, abuse did occur through the persistent and overbearing harassment by the petitioner, both directly to her and in contacting her superiors and chain of command in the U.S. Navy, creating a disruptive environment, and overall inappropriate conduct. The Court finds the petitioner has established a pattern of situational coercive and controlling behavior over the respondent, causing reasonable apprehension from the respondent, as her peace has been disturbed by the petitioner as described in the pleadings in this case and by the respondent's testimony in court."

10

"But I cannot find at this point given the type of issues that were going on that Ms. Hutchins' safety would be jeopardized if the court failed to make orders. I think that the restraining order has served its purpose, that we have gotten to a point after this period of enforced separation since the filing of the restraining order [as a result of the temporary restraining order], that we are now to a point where the petitioner's safety would no longer be endangered if the court failed to make the orders. So I don't think that orders are necessary to prevent this reoccurrence [*sic*] at this period. I think that there has been enough time that the parties have been separated for sufficient time to enable them to resolve the causes of the violence. And in considering the totality of the circumstances, I am making a finding not to grant the restraining order at this time."

After making this ruling, the court immediately proceeded to discuss the issue of custody, stating, "So that leads up to the issue of the custody and parenting time." The court stated:

"The court has to use the standard set out in the California Family Code, and it is California public policy that the health, safety, and welfare of the children is the Court's primary concern in determining the best interest of children during custody and visitation disputes. That's Family Code section 3020. It is also public policy that children have frequent and continuing contact with both parents after the parents have separated or dissolved their relationship and to encourage parents to share the rights and responsibilities of childrearing unless contact would not be in the children's best interest. And if the two policies conflict, the Court's order must ensure the children's health, safety, and welfare, and the safety of all family members. In this case then, the Court looks to what is going to be in the children's best interest."

The court proceeded to discuss the "children's need for continuity and stability," mentioning the "upheavals that they have had to endure over the

11

last couple of years." The court noted that for the previous two years, Dana had been the primary caregiver, and although there had been a brief period of time during which the parties "were switching on and off for a few weeks," at the time of the hearing, the children had been with Dana "for a few months." The court stated, "[I]t's my belief that it would be in their best interest to maintain the current plan for a period of time and step up to the 50, 50, just so that they can have some continuity and stability before we change things up on them yet again . . . . And so because of that, I am going to maintain the current parenting plan . . . ."

The court then stated that it would adopt the "original FCS report that is dated September 28th of 2020, with the modification beginning 2C, that beginning April 1st of 2021, the parenting of the children shall be as follows." The court set out a parenting plan known as a "2, 2, 5 plan," which gives parents an equal time share but does not require that children be away from one parent for a week at a time, to begin in April 2021. The court also stated, "Otherwise, I'll adopt everything else as previously ordered at the last court hearing. . . . [B]ut with that modification." At this point in the hearing, it appears that the court noticed that Dana's attorney was trying to get the court's attention. The court asked, "Ms. Minella, did you have any questions?"

Dana's attorney responded, "I do, Your Honor. So to clarify, is the court making a finding that domestic violence occurred?" In response, the court said, "Yes, and I should say that I am making that finding. I'm not issuing the restraining order. And pursuant to Keith R., I do believe it is in the best interest of the children to order ultimately the 50, 50 custody and overcome the 3044 presumption. Thank you for that reminder." Dana's attorney sought further clarification from the court: "Okay. So then in the findings I

12

can include that in the order. And then the court is ordering that 3044 has been rebutted. So 3044 is not applicable. I got that correct; yes?" The court indicated that Dana's attorney's understanding of the trial court's ruling was correct.

Finally, the trial court admonished Jared about his conduct:

> "Sir, I want you to know that you were dangerously close to having a restraining order issued here. And so if there were to be further communication that exceeded any normal contact with the military or involved issues related to your dissolution, the Court would consider issuing a restraining order in the future, it would reconsider its decision here. . . . Do you understand that, Mr. Hutchins?"

Jared indicated that he understood the court's warning. The court's minute order from the hearing corresponds with the trial court's oral ruling and includes as an attachment a detailed "PARENTING PLAN," which provides that Dana was to have primary physical custody of the children until April 1, 2021, and beginning on that date, the parties would share equal time with the children. The plan also set out the division of holidays, how exchanges were to take place, and requirements governing communication between the parties.

Dana filed a timely notice of appeal on March 18, 2021.

## III.

## DISCUSSION

A. *There is no indication that the court's custody order was a temporary order*

Jared initially asserts that Dana's appeal should be dismissed because, he contends, it has been taken from "a non-appealable temporary child

13

custody order."[8]  Although Jared is correct in his assertion that a temporary order regarding child custody is not appealable, we conclude that the order from which Dana appeals is not a temporary custody order.

"It is settled that the right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute.  [Citation.]  In civil matters, Code of Civil Procedure section 904.1 is the main statutory authorization for appeals.  Code of Civil Procedure section 904.1, subdivision (a) provides in relevant part that an appeal may be taken from:  a final judgment (subd. (a)(1)); an order made after an appealable judgment (subd. (a)(2)); or 'an order made appealable by the provisions of the Probate Code or the Family Code' (subd. (a)(10))."  (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377 (*Enrique M.*).)  Given that the "Family Code contains no express provision governing appeals of child custody orders" other than orders "to enforce an order for the return of a child under the Hague Convention on the Civil Aspects of International Child Abduction," "the right to appeal a child custody determination is generally limited to final judgments and orders made after final judgments.  [Citations.]"  (*Ibid.*)

Thus, to be appealable, an order must "finally determine all issues or end the litigation between the parties."  (*George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 141.)  " ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative" ' of whether an order is a final judgment."  (*Id.* at p. 141, fn. 5.)  Therefore, in the context of an order setting out custody and/or visitation, the question is whether the court, in issuing the order, intends to effectuate a final adjudication of the parties' rights of custody or visitation.

---

[8]    Jared did not file a motion to dismiss the appeal, but instead makes this argument in his respondent's brief.

14

In *Enrique M.*, the father filed a complaint to establish a parental relationship and to determine child custody and visitation. (*Enrique M., supra*, 121 Cal.App.4th at p. 1378.) After a contested hearing, the court entered a custody order. The reviewing court concluded that the order, which was "entered after a hearing and determining the issues raised in Enrique's complaint, constituted an appealable 'final judgment[ ] as to custody.' " (*Ibid.*)

The custody order from which Dana appeals was entered after a contested hearing—held over two nonconsecutive days—addressing both Dana's November 2020 request for a DVRO, and Jared's July 2019 RFO regarding custody.[9] Both parties filed documents titled "Long Cause Brief," and Jared's brief indicated that although the issue of "holidays and legal joint custody" had been settled, he identified "Custody–daily parenting time" and the "DVRO" as the two issues "left to be litigated" at the evidentiary hearing. At the beginning of the contested evidentiary hearing, the trial court noted that it had reviewed all of the documents that the parties had filed related to both the custody issue *and* the DVRO issue, going back as far as Jared's original July 31, 2019 RFO regarding custody.[10] After the court found that it

---

[9]  The minute order issued with respect to the long-cause evidentiary hearing indicated that it comprised both the "Jared Hutchins Evidentiary Hearing: (P) CC/CV; Filed 7/31/2019; Cont'd from 10/28/2020; Cont'd from 12/21/2020; TE: 5 hours" and the "Dana Hutchins Retraining Order Hearing: (R) DVTRO; Issued 11/13/2020; Cont'd from 12/1/2020."

[10]  The trial court stated: "This Court has reviewed the original request for order that was filed on July 31st of 2019, filed by Mr. Hutchins for child custody, support, spousal support, and attorney's fees. [¶] I reviewed the response filed by Ms. Hutchins on December 5th of 2019. This case, of course, as you all know, has gone through some issues related to the UCCJEA. The Court did make a finding that this Court does have

15

was not necessary to issue a permanent DVRO, despite having found that Jared had engaged in domestic violence, the court proceeded to set out a detailed custody arrangement, asserting that its determination of custody and visitation was based on the court's conclusions as to what custody arrangement would be in the best interests of the children.

The trial court set out a comprehensive and detailed custody order. At no point did the court indicate that its order was intended to be an interim or temporary custody order, nor did the court indicate that it was contemplating further hearings or proceedings with respect to the issue of custody.[11] Because a custody order entered after a contested evidentiary hearing and devoid of any indication that the order is intended to be interim normally constitutes a final judgment from which an appeal may be taken (see *Enrique M., supra*, 121 Cal.App.4th at pp. 1377-1378), we conclude that the custody order entered by the trial court on December 28, 2020 constitutes a *final* custody order from which Dana may appeal.

jurisdiction. [¶] Then I reviewed the declaration filed on October 21st of 2020, by Ms. Hutchins, the declaration filed by Mr. Hutchins on October 22nd. I reviewed the [request for] restraining order filed on November 13th of 2020, including the declarations and points and authorities. I reviewed Mr. Hutchins' response dated November 30th of 2020, and then the long-cause brief that has been filed by both parties." The court then asked the parties' attorneys whether the court had "miss[ed] any documents." Neither attorney indicated that the court had failed to consider a relevant document.

[11] In contrast, the trial court specifically noted that there were future proceedings and hearings set for purposes of addressing support issues in the case.

16

B. *The record is sufficient to permit this court to address the legal issues that Dana has raised*

Jared contends in the alternative that the record on appeal is "inadequate on its face to permit meaningful appellate review." We disagree.

First, the record contains the documents relevant to the issues raised on appeal. Specifically, the record contains the parties' written requests for orders (i.e., the request for determination of custody filed by Jared in July 2019 and the request for a DVRO filed by Dana in November 2020), as well as a transcript of the entire evidentiary hearing, including the trial court's oral pronouncement of its ruling with respect to both the RFO regarding custody and the request for the DVRO. The record also contains the trial court's lengthy minute order reflecting what transpired at the hearing, as well as the court's specific rulings and orders.

Jared contends that the record is inadequate because it does not include certain other documents. Specifically, he asserts that the lack of transcripts or minute orders from "several key hearings from which [Dana's] appeal stems" is fatal. He identifies the lack of a transcript or minute order from the following three proceedings as problematic: (1) "The December 20, 2019 RFO hearing , during which initial temporary child custody and visitation orders were purportedly made"; (2) "The July 14, 2020 DVRO hearing, during which the trial court denied Dana's first request for a DVRO"; and (3) "The October 28, 2020 RFO hearing, during which the court made additional temporary child custody and visitation orders." The problem with Jared's argument is that the records of these proceedings are not necessary for this court's consideration of Dana's contention that the trial court failed to comply with the requirements of section 3044 with respect to the order at hand. The fact that the court made a prior temporary order

17

regarding custody is not relevant for purposes of determining whether the court properly applied section 3044 with respect to the permanent custody order from which Dana appeals. Similarly, the fact that Dana sought a prior DVRO that was denied does not affect our review of what the court did in the proceeding that resulted in the order from which Dana appeals. In sum, the transcripts and minute orders from these prior proceedings are not necessary to our determination of the issues raised in *this* appeal.

Jared also contends that Dana "failed to provide" certain "key court filings and exhibits upon which the Court expressly relied in making its findings and orders at the December 28, 2020 RFO hearing." He identifies two Family Court Services reports (one from September 2019 and one from September 2020), Dana's prior DVRO request from May 2020, and the parties' exhibits that the court admitted at the evidentiary hearing on Dana's November 2020 DVRO request and Jared's RFO regarding custody. However, Dana's arguments on appeal challenge whether the trial court properly applied section 3044 and followed all of the statutory directives in that provision *as a matter of law*. Dana's contentions do not hinge on the evidence presented at the hearing, nor do they require an assessment as to whether the court abused its discretion in how it applied the law to the facts that it found. Dana is arguing that in making its ruling, the trial court failed to comply with the statutory requirements set forth in section 3044. The record that Dana has supplied on appeal, which, as noted, includes the parties' moving papers, the transcript of the hearing, the trial court's oral ruling, and the court's written minute order provides a sufficient basis to permit this court to assess her claims.

18

C. *The trial court prejudicially erred in failing to comply with the statutory requirements, and in relying on an improper policy concern, in concluding that the presumption of section 3044 had been rebutted*

Dana contends that the trial court "incorrectly applied Family Code [section] 3044" in multiple ways. She points out that the court essentially made its custody order *prior* to making any finding that the presumption of section 3044 had been rebutted, noting that the court's finding that Jared had engaged in domestic violence triggered the presumption of section 3044, and that this presumption is to be applied *before* a court decides the issue of custody and visitation. Dana also contends that the court failed to place the burden *on Jared* to demonstrate by a "preponderance of the evidence" that the presumption had been rebutted. She further contends that the trial court erred in specifically relying on the general policy preference favoring "frequent and continuing contact with both parents,"—a public policy set out in Family Code sections 3020 and 3040—in concluding that the section 3044 presumption had been rebutted. As Dana points out, section 3044, subdivision (b)(1) expressly provides that the policy preferences identified in Family Code sections 3020 and 3040 *may not be used* to rebut the section 3044 presumption. Dana also notes that section 3044 sets out seven factors that "the court [must] consider in determining whether the presumption has been overcome," and contends that the trial court erred in failing to address these factors on the record.

1. *Relevant legal standards and the statutory scheme*

Dana challenges the trial court's interpretation of, and application of, section 3044.

Although an appellate court typically "review[s] custody and visitation orders for an abuse of discretion, and appl[ies] the substantial evidence standard to the trial court's factual findings" (*Jaime G. v. H.L.* (2018)

19

25 Cal.App.5th 794, 805 (*Jaime G.*)), to the extent the issue asserted on appeal involves statutory interpretation, our review is de novo (*ibid*.). In addition, a court necessarily "abuses its discretion if it applies improper criteria or makes incorrect legal assumptions." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497, italics omitted.)

"Section 3044 establishes a rebuttable presumption that an award of joint or sole custody to a parent who has perpetrated domestic violence is not in a child's best interests." (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 195 (*Abdelqader*).) Section 3044 states in pertinent part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).)

"The section 3044 'presumption is mandatory and the trial court has no discretion in deciding whether to apply it: "[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made." ' " (*Abdelqader, supra*, 76 Cal.App.5th at p. 196, quoting *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661.)

As section 3044 makes clear, although application of the presumption is mandatory, the presumption is rebuttable. The language of section 3044 demonstrates that a trial court must undertake two steps before concluding that the presumption of section 3044 has been overcome. (§ 3044, subd. (b).) First, the court must find that the parent who has perpetrated the domestic violence has demonstrated that it "is in the best interest of the child pursuant

20

to Sections 3011 and 3020" to give the perpetrator sole or shared custody. (*Id.*, subd. (b)(1).)[12]  The statute specifies that in making the requisite

---

[12]     Section 3011 provides in relevant part:

> "(a) In making a determination of the best interests of the child in a proceeding described in Section 3021, the court shall, among any other factors it finds relevant and consistent with Section 3020, consider all of the following:
>
> > (1) The health, safety, and welfare of the child.
> >
> > (2) (A) A history of abuse by one parent or any other person seeking custody against . . .
> >
> > > (ii)  The other parent."

Section 3020 provides in relevant part:

> "a) The Legislature finds and declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children. *The Legislature further finds and declares that children have the right to be safe and free from abuse, and that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child.*
>
> "(b) The Legislature finds and declares that it is the public policy of this state to ensure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, or ended their relationship, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except when the contact would not be in the best interests of the child, as provided in subdivisions (a) and (c) of this section and Section 3011.
>
> "(c) *When the policies set forth in subdivisions (a) and (b) of this section are in conflict, a court's order regarding physical or legal custody or visitation shall be made in a*

21

finding regarding the best interests of the children, the court is *prohibited from relying on* "the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040." Second, the court must consider each enumerated factor contained in section 3044, subdivision (b)(2) and "find that the factors in [subdivision (b)](2), on balance," weigh in favor of granting some amount of custody to the perpetrator in terms of protecting the child's health, safety, and welfare. (§ 3044, subd. (b).)[13]

_____

> *manner that ensures the health, safety, and welfare of the child and the safety of all family members."* (Italics added.)

[13] The following are the factors to be considered and balanced, as set out in subdivision (b)(2) of section 3044:

> "(A) The perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.

> "(B) The perpetrator has successfully completed a program of alcohol or drug abuse counseling, if the court determines that counseling is appropriate.

> "(C) The perpetrator has successfully completed a parenting class, if the court determines the class to be appropriate.

> "(D) The perpetrator is on probation or parole, and has or has not complied with the terms and conditions of probation or parole.

> "(E) The perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions.

> "(F) The perpetrator of domestic violence has committed further acts of domestic violence.

Importantly, section 3044 mandates that the trial court "make specific findings on each of the factors in subdivision (b)." (§ 3044, subd. (f)(1).) "If the court determines that the presumption . . . has been overcome, the court *shall state its reasons* in writing or on the record as to why" the two-step requirement has been met. (*Id.*, subd. (f)(2), italics added.) Thus, "[t]he statement of reasons *must* address all of the factors outlined in section 3044, subdivision (b). [Citations.]" (*Abdelqader, supra*, 76 Cal.App.5th at p. 196, italics added.)

In addition, subdivision (g) of section 3044 specifies that the trial court is to consider whether section 3044 applies *before* entering anything other than an interim custody order: "In an evidentiary hearing or trial in which custody orders are sought and where there has been an allegation of domestic violence, the court shall make a determination as to whether this section applies prior to issuing a custody order, unless the court finds that a continuance is necessary to determine whether this section applies, in which case the court may issue a temporary custody order for a reasonable period of time, provided the order complies with Sections 3011 and 3020."

2. *Analysis*

What occurred at the evidentiary hearing in this case is similar to what occurred in *Abdelqader, supra*, 76 Cal.App.5th at pages 195-198, a case that was the subject of an opinion recently issued by another panel of this court. In *Abdelqader*, it was undisputed that the trial court had determined that the section 3044 presumption applied. (*Id.* at p. 197.) However, the record failed to demonstrate "that the [trial] court provided the necessary statement of

> "(G) The court has determined, pursuant to Section 6322.5, that the perpetrator is a restrained person in possession or control of a firearm or ammunition in violation of Section 6389."

23

reasons addressing each factor outlined in section 3044, subdivision (b).” (*Ibid.*) The *Abdelqader* court concluded that the court’s failure to follow the precise dictates of section 3044 constituted reversible error. In reaching this conclusion, the court rejected the respondent’s argument that because the appellant had not requested a statement of decision, the doctrine of implied findings operated to require affirmance of the trial court’s order.[14] The *Abdelqader* court explained why the doctrine of implied findings does not apply in such a scenario:

> “[Respondent] has not provided any authority wherein a court applied the doctrine of implied findings to the requirements of section 3044. Indeed, none of the cases on which [respondent] relies involved the section 3044 presumption. [Citations.] Moreover, our independent research has not found any case where an appellate court held that a trial court does not have to comply with the requirements of section 3044 unless a party requests a statement of decision. The reason for this absence is clear. Section 3044 is not triggered by whether a party requests a statement of decision. Further, such a request (or the absence of such a request) does not impact a court's duty to follow section 3044 whatsoever.

> “A trial court’s obligations under section 3044 begin once the court makes a finding of domestic violence. [Citation.] Moreover, the statute is explicit that the court must consider the factors set forth in section 3044, subdivision (b) and, if the court determines that the presumption has been overcome, it must state its reasons in writing or on the record. [Citations.] There is no requirement in section 3044 that a party must first request a statement of decision

---

14 “ ‘Under the doctrine of “implied findings,” when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the [order] for which there is substantial evidence.’ ” (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.)

24

before a court must comply with subdivision (f) of the statute. In fact, a statement of decision is not mentioned anywhere in the statute. And we will not read any such language into section 3044. [Citation.] As such, the doctrine of implied findings does not relieve a court of its obligations under section 3044." (*Abdelqader, supra,* 76 Cal.App.5th at pp. 197-198.)

In other words, regardless of whether an appellant requests a statement of decision with respect to a trial court's rulings regarding section 3044, a reviewing court will examine the record to determine whether the trial court fulfilled its obligations under section 3044.

Like the trial court in *Abdelqader,* the trial court in this case determined that domestic violence had occurred and indicated that the section 3044 presumption applied.[15] However, after finding that Jared had

---

[15] Despite having found that Jared had perpetrated domestic violence, after denying Dana's request for a DVRO and moving on to addressing the issue of custody of the children, the trial court essentially completed its custody ruling without mentioning section 3044. When the court concluded its remarks, the court asked whether Dana's attorney had any questions about the court's order. Dana's attorney asked whether the court had made a finding that domestic violence had occurred. It was only in response to Dana's attorney's inquiry that the court mentioned or addressed section 3044, stating:

> "Yes, and I should say that I am making that finding. I'm not issuing the restraining order. And pursuant to <u>Keith R</u>., I do believe it is in the best interest of the children to order ultimately the 50, 50 custody and overcome the 3044 presumption. Thank you for that reminder."

Jared suggests that Dana forfeited her appellate contentions by failing to further "object to [the court's] application of section 3044 at the trial level." As evidence of Dana's forfeiture of this issue, Jared points to the fact that Dana's attorney asked, specifically, what to include in a proposed order that she had been designated to prepare for the court, confirmed that the court was "ordering that [section] 3044 has been rebutted[,] [s]o [section] 3044 is

25

perpetrated domestic violence, the trial court never fully complied with the requirements of section 3044. The court did not make any of the "specific findings on each of the factors in subdivision (b)" as required by subdivision (f)(1) of section 3044. Nor did the court "state its reasons in writing or on the record as to why" both provisions of subdivision (b) were met, as required by subdivision (f)(2) section 3044. The doctrine of implied findings does not operate to permit us to presume that the court fulfilled all of the requirements of section 3044. As in *Abdelqader*, the record in this case demonstrates, on its face, that the trial court did *not* comply with the requirements of section 3044, subdivisions (b) and (f). (See *Abdelqader, supra*, 76 Cal.App.5th at pp. 197-198.) The court's failure to follow the express mandates of section 3044 was error. (See *Abdelqader,* at pp. 197-198; see also *City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 544 (*H.H.*) [appellate court "ha[d] no choice but to conclude the court failed to comply with section 3044" where trial court failed to meet section 3044's requirements that the court (1) find "the presumption overcome by a preponderance of the evidence showing the order was in the child's best interest—without consideration of the statutory preference for 'frequent and

___

not applicable," and asked the court whether she had "got[ten] that correct." We disagree with Jared's forfeiture argument. Dana's attorney raised the issue of the finding of domestic violence; in so doing, Dana's attorney placed the trial court on notice of the fact that the court's finding had triggered the presumption of section 3044. The court had already set out the entirety of its custody order without making any mention of section 3044. As noted, it was only *in response to Dana's attorney's inquiry* that the court addressed the presumption of section 3044. And when the court did address section 3044, the court stated in a conclusory manner that the presumption had been "overcome." Under these circumstances, Dana adequately raised the issue of the effect of the court's finding of domestic violence to allow the court the opportunity to properly apply the presumption of section 3044; it was clear that the court felt that it had sufficiently addressed the matter.

continuing contact with both parents,' " (2) determine that "the factors in section 3044, subdivision (b)(2), 'on balance, support the legislative findings in Section 3020,' " and (3) "state its reasons for making these findings 'in writing or on the record,' including 'specific findings on each of the factors in subdivision (b)' "].)

Jared argues that even if the trial court erred in its application of section 3044, the error was harmless. In California, prejudicial error implicating state law concerns is ordinarily found only if, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

The courts in *Abdelqader* and *H.H.* addressed the issue of prejudice where the trial court failed to comply with the requirements of section 3044 to make findings on all of the statutory factors. In both cases, the courts concluded that the trial court's error in failing to make all of the required findings and in failing to state its reasons for concluding that the presumption had been overcome was prejudicial. (See *Abdelqader, supra*, 76 Cal.App.5th at p. 198; *H.H., supra*, 76 Cal.App.5th at p. 547.) As the *H.H.* court noted, a record that "offers no explanation to . . . demonstrate the court found the presumption rebutted," results in prejudice. (*H.H.*, at p. 547.)

Like those courts, we conclude that under the circumstances of this case, it is reasonably probable that a result more favorable to Dana may have been reached if the trial court had properly applied section 3044 in the manner in which the Legislature intended. As the court in *Jaime G., supra*, 25 Cal.App.5th at pp. 805-807, explained, the Legislature's very purpose in creating the scheme set out in section 3044 was to ensure that trial courts

give proper consideration to, and adequately reflect on, the harm to children caused by any perpetration of domestic violence. "The purpose of the rebuttable presumption statute is to move family courts, in making custody determinations, to *consider properly* and to *give heavier weight to* the existence of domestic violence." (*Jaime G.*, at p. 805, italics added, citing Sen. Com. on Judiciary, Analysis of Assem. Bill No. 840 (1999-2000 Reg. Sess.) July 13, 1999.) "Presumptions are used in this context because courts have historically failed to take sufficiently seriously evidence of domestic abuse. [Citation.] [¶] "Without such [pre]sumptions, it has been too easy for courts to ignore evidence of domestic abuse or to assume that it will not happen again. As with the limitations on consideration of the gender of a parent or child, presumptions function to counteract the proven tendency of some courts to make judgments based on ignorance or stereotypes.' " (*Jaime G.*, at p. 806, quoting Bartlett, Preference, Presumption, Predisposition, and Common Sense: From Traditional Custody Doctrines to the American Law Institute's Family Dissolution Project (2001) 36 Fam. L.Q. 11, 23.)

"By enacting the seven factors in the rebuttable presumption statute, the Legislature created a mandatory checklist for family courts. Mandatory checklists can improve professional decisionmaking for professionals as diverse as surgeons and pilots," and although such checklists "can seem bothersome to experienced professionals," the Legislature created a checklist in this context in order "to require family courts *to give due weight* to the issue of domestic violence." (*Jaime G., supra*, 25 Cal.App.5th at p. 806, italics added.) In addition, the requirement of written findings or findings otherwise stated on the record was included to facilitate meaningful appellate review grounded in the "policies set forth in the governing law," which is "essential to the creation of the body of precedent necessary for the system of

28

rebuttable presumptions to produce consistent and predictable results." (*Ibid.*)

A trial court's omission of the findings required under section 3044 leaves a reviewing court unable to adequately assess whether the trial court gave due weight to the issue of domestic abuse, or whether the court would have approached a particular scenario differently if it had gone through all of the steps contemplated by the legislative scheme. As the *Jaime G.* court explained, the failure of the trial court to make the requisite findings under section 3044 "raise[d] questions" that the appellate court could not answer. (*Jaime G., supra*, 25 Cal.App.5th at p. 807.) The *Jaime G.* court noted that despite its finding that the father had committed domestic violence against the mother, the trial court had imposed "no batterer's treatment program on Father," and the appellate court was left unable to know why; it was possible that the trial court "simply may have overlooked the statutory suggestion of such a program." (*Ibid.*) The same is true here. We do not know why the trial court did not impose a treatment program or a parenting class, which are among the factors included in subdivision (b)(2) of section 3044, or whether it even considered that such a program or class could have been imposed in connection with the custody order. Given that there was a prior history of domestic violence,[16] it is possible that the court may have

---

[16] As the trial court noted, the "parties by their own admission have this prior history of domestic violence where both parties engaged in some physical conduct, but that occurred much prior to this." Jared testified that he had completed a "52-week anger management course" and attended "counseling with our spiritual leaders" after a 2012 incident involving physical violence. The trial court found that despite Jared's earlier efforts to address these issues, Jared again engaged in conduct that constituted domestic violence.

approached the issue of custody differently if it had complied with the specific requirements set forth in section 3044, as the Legislature intended.

Further, the trial court erroneously relied on the "public policy that children have frequent and continuing contact with both parents after the parents have separated or dissolved their relationship," in direct contravention of section 3044's express prohibition of such reliance in determining that section 3044's presumption has been rebutted. (See § 3044, subdivision (b)(1) ["In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040, *may not be used to rebut the presumption*, in whole or in part" (italics added)].) If the trial court had complied with the requirements of section 3044, and not considered the general policy that favors frequent and continuing contact with both parents, it is reasonably probable that the court may not have determined that the presumption had, in fact, been rebutted.

We therefore conclude that the trial court's custody order must be reversed and the matter remanded so that the court may properly apply section 3044. (See *Abdelqader, supra*, 76 Cal.App.5th at p. 198 [reversing and remanding to allow trial court to "properly consider section 3044"]; *H.H., supra*, 76 Cal.App.5th at p. 547 ["[r]eversal of the visitation order is required"]; *Noble v. Superior Court* (2021) 71 Cal.App.5th 567, 582 [issuing "a writ of mandate reversing the family court's [interim] custody orders and directing the family court to reassess custody in light of the presumption set forth in section 3044"]; *Jaime G., supra*, 25 Cal.App.5th at p. 809 [reversing

and remanding for trial court "to hold a new hearing and to provide th[e required] statement of specific reasons"].)[17]

IV.

DISPOSITION

The trial court's order issued December 28, 2020 regarding custody of the parties' children is reversed and the case is remanded to the trial court to conduct a new proceeding, and issue a new order, in compliance with the statutory requirements of section 3044. Dana is entitled to her costs on appeal.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

---

[17] In reversing, we express no opinion as to how the trial court should decide the issue regarding whether the section 3044 presumption has been rebutted. We recognize that on remand, much time will have passed and the court will have additional information before it as to how the parties have conducted themselves in the interim. The court is free to take all of this information into consideration in applying section 3044.